CITY OF DALLAS, Petitioner,

v.

Greg ABBOTT, Attorney General
of Texas, Respondent.

No. 07–0931.

Supreme Court of Texas.

Argued Oct. 15, 2008.

Decided Feb. 19, 2010.

James B. Pinson, Barbara E. Rosenberg, Assistant City Attorneys, Thomas P. Perkins, Jr., Dallas City Attorney, Johanna Greiner, Dallas City Attorney's Office, Dallas, TX, for Petitioner.

Brenda Loudermilk, Office of the Attorney General of Texas, Jason D. Ray, Riggs Aleshire & Ray, Greg W. Abbott, Attorney General, Barbara Bryant Deane, Assistant Attorney General, Kent C. Sullivan, David S. Morales, Office of the Attorney General of Texas, James C. Ho, Solicitor General of Texas, Clarence Andrew Weber, First Assistant Attorney General, Austin, TX, for Respondent.

Clay T. Grover, Feldman Rogers Morris & Grover, LLP, Houston, TX, for Amicus Curiae Texas Association of School Boards.

Quincy Quinlan, Texas Association of Counties, Austin, for Amicus Curiae Texas Association of Counties.

Paul C. Watler, Jackson Walker, L.L.P., Dallas, TX, for Amicus Curiae Freedom of Information Foundation of Texas.

Christopher D. Kratovil, K&L Gates LLP, Dallas, TX, for Amicus Curiae Senator John Cornyn.

Justice O'NEILL delivered the opinion of the Court in which Chief Justice JEFFERSON, Justice HECHT, Justice MEDINA, Justice GREEN, and Justice GUZMAN joined.

The Public Information Act mandates disclosure of public information upon request to a governmental body, but excepts certain categories of information from the disclosure requirement. *See* TEX. GOV'T CODE §§ 552.021, 552.221, 552.101–.136. A governmental body wishing to claim an exception must make a timely request for an attorney general's opinion as to the exception's applicability. *Id.* § 552.301(a). If a request is not timely made, the information is presumed subject to disclosure unless there is a compelling reason to withhold it. *Id.* § 552.302. In this case, we must decide whether the governmental body's request was timely, and, if not, whether the public policy reasons supporting the confidentiality of attorney-client communications are sufficiently compelling to overcome the public-information presumption that applies when a governmental body fails to make a timely request. We hold that the timeliness of a request for an attorney general opinion is measured from the date a party seeking public information responds to a governmental body's good-faith request for clarification or narrowing of an unclear or overbroad information request. Accordingly, we reverse the court of appeals' judgment and render judgment that the information in the City's exhibits F and G is excepted from disclosure under the Act.

## I. Background

On May 16, 2002, the City of Dallas received a Public Information Act request from James F. Hill, II, for

1. Any and all information pertaining to the City of Dallas "Assessment Center Process" for uniform positions of the Dallas Fire and Police Departments."

2. The definition of KG/BRG?

3. Any and all memos, directives, documents and communications of meetings of (scheduled or un-scheduled) boards, councils, department heads/staff, and City Managers pertaining

to the establishment of the Assessment Center Process.

On May 22, the City responded, seeking to clarify whether Hill sought "information regarding specific assessment centers and if so for what period of time." *See id.* § 552.222(b) (allowing a governmental body to seek clarification of an unclear request). Six days later, Hill replied, clarifying his request as follows:

> The time frame and positions I am relating the request for are: the positions of Dallas Fire Rescue Fire Lieutenant and Captain for the year 2000.
>
> Additionally:
>
> * Any written documents on "how Assessment Process was to be administered" for the above positions and time frame.
>
> * Job Analysis for the positions of Fire Lieutenant and Fire Captain and date of each analysis.
>
> * Any contracts between Booth and the City of Dallas/Civil Service to conduct the Assessment Center for the Dallas Fire department positions Fire Lieutenant and Fire Captain.
>
> * An explanation on the "mirroring" of percentages between Fire Prevention and Fire Operations testing for the same time period.

In preparing to fulfill the clarified request, the City encountered several documents, identified as exhibits F and G, which it considered protected from disclosure by the attorney-client privilege. TEX.R. EVID. 503(b)(1); TEX. GOV'T CODE § 552.107(1). On June 10, 2002, the City requested an attorney general opinion regarding application of the privilege to the withheld documents. TEX. GOV'T CODE § 552.301(a). The Attorney General concluded that the City's request was untimely. *See id.* § 552.301(b) (requiring a governmental body to request an attorney general decision "not later than the 10th business day after receiving the written request" when seeking to withhold information). According to the Attorney General, the ten-day clock began to run on May 16 when the City received Hill's first request, and the City's May 22 response seeking clarification merely tolled the ten-day clock until Hill's second letter was received on May 28. *See* Tex. Att'y Gen. ORD–663 (1999). With the clock tolled until May 29, the City had until June 6 to request an attorney general decision, according to the Attorney General's calculations.[1] Because the City did not submit its request until four days later, on June 10, the Attorney General determined the City's request was untimely. As a result, the Attorney General explained, a legal presumption arose that exhibits F and G were public, and the City could only overcome that presumption by demonstrating a compelling reason to withhold the documents. *See id.* § 552.302; *Hancock v. State Bd. of Ins.*, 797 S.W.2d 379, 381 (Tex.App.-Austin 1990, no writ). Considering the attorney-client privilege a discretionary exception subject to waiver, the Attorney General concluded that a compelling reason to overcome the public-information presumption had not been presented.

■ The City brought this suit seeking a declaratory judgment that exhibits F and G are protected from public disclosure by the attorney-client privilege.[2] *See* TEX.

---

1. It appears that the Attorney General excluded the dates of the City's clarification request and Hill's response, as well as two intervening weekends and Memorial Day (May 27) in calculating that response deadline.

2. The City also sought a writ of mandamus ordering the Attorney General to declare the documents excepted from public disclosure. Absent express statutory authority providing otherwise, "[o]nly the supreme court has the

Gov't Code §§ 552.324, 552.325; *In re City of Georgetown*, 53 S.W.3d 328, 330 (Tex. 2001). At trial, the City argued that its request for an attorney general decision was timely because the ten-day response period under section 552.301(d) did not begin to run until Hill clarified his request. Alternatively, the City contended the public policy reasons that support the attorney-client privilege are sufficiently compelling to overcome the public-information presumption. After a bench trial, the trial court—initially assuming the privileged nature of the documents and later confirming, *in camera*, the privilege under Texas Rule of Evidence 503(b)(1)—rejected both arguments and ordered that the documents be disclosed. The court of appeals affirmed. 279 S.W.3d 806, 808. We granted the City's petition for review to consider the Act's application under the circumstances presented. 51 Tex. S. Ct. J. 1076 (Tex. June 27, 2008).[3]

## II. Discussion

We first consider the timeliness of the City's request for an attorney general opinion. A governmental entity that believes information requested under the Public Information Act is excepted from disclosure must ask for an attorney general's opinion no later than the tenth business day after it receives the request. Tex. Gov't Code § 552.301(b). But, "[i]f what information is requested is unclear to the governmental body, the governmental body may ask the requestor to clarify the request." *Id.* § 552.222(b). Further, "[i]f

a large amount of information has been requested, the governmental body may discuss with the requestor how the scope of a request might be narrowed. . . ." *Id.* We must decide what effect a request for clarification or narrowing has on the ten-day deadline. Section 552.222(b) is silent on this issue.

The City contends the ten-day period should be measured from the date the party seeking public information clarifies or narrows the request. It maintains that Hill's original letter was so broad that it did not put the City on notice that he was requesting the information in exhibits F and G. The City notes that section 552.301(b) requires a governmental body seeking a ruling that information is excepted from disclosure to "state the exceptions that apply within a reasonable time but not later than the 10th business day after the date of receiving the written request." According to the City, a governmental body cannot reasonably comply with that obligation if the request is unclear or overbroad.

Relying on a 1999 open records decision, Open Records Decision No. 663, the Attorney General contends the ten-day deadline for the City to request a ruling under section 552.301(b) was merely tolled during the period the City was waiting for a response from Hill, and did not reset once the City received Hill's clarification. According to the Attorney General, such a construction is necessary to ensure that governmental bodies comply with their

authority to issue a writ of mandamus ... against [the Attorney General]". *See A & T Consultants, Inc. v. Sharp*, 904 S.W.2d 668, 672 (Tex.1995) (citing Tex Gov't Code § 22.002(c)). Because the City requested only declaratory relief in its prayer, we will address our attention only to that issue.

**3.** We have received *amicus curiae* briefs supporting the City from the Texas Association of

Counties and, jointly, the Texas Association of School Boards Legal Assistance Fund, Texas Municipal League, and the Texas City Attorneys Association. The Freedom of Information Foundation of Texas, the Texas Association of Broadcasters, and the Texas Daily Newspaper Association filed a joint brief in support of the Attorney General, as did Senator John Cornyn.

duty to respond promptly to requests for public information. *See* Tex. Gov't Code § 552.221(a). If the ten-day period were reset rather than tolled by a clarification request, the Attorney General argues, governmental bodies could extend the deadline to respond to a public information request indefinitely by repeatedly requesting clarification. The Attorney General maintains that a conclusion that a clarification request restarts the statutory deadline would be contrary to the Act's directive that its provisions are to be "construed in favor of granting a request for information." *Id.* § 552.001(b).

■■■ Our task in construing a statute is to give effect to the Legislature's intent in enacting it. *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex.2001). Ordinarily, we are confined to the statute's plain language. *Id.* (citing *Morrison v. Chan,* 699 S.W.2d 205, 208 (Tex.1985)). However, when a provision is silent as to its consequences as it is here, we look to the statute as a whole and strive to give it a meaning that is in harmony with other provisions. *Id.* (citing *Barr v. Bernhard,* 562 S.W.2d 844, 849 (Tex.1978)). We presume that the Legislature intended all provisions of a statute to be effective, and that it intended a just and reasonable result. *Id.* (citing Tex. Gov't Code § 311.021(2), (3)). While the Attorney General's interpretation of the Act may be persuasive, it is not controlling. *Holmes v. Morales,* 924 S.W.2d 920, 924 (Tex.1996). In this instance, we conclude that the Attorney General's interpretation of section 552.222(b) is inconsistent with other provisions of the Act. Reading section 552.222(b) in harmony with those provisions, we hold that when a governmental entity, acting in good faith, requests clarification or narrowing of an unclear or overbroad request for public information, the ten-day period to request an attorney general opinion is measured from the date the request is clarified or narrowed.

## A. Other Provisions of the Act

The Legislature has clearly expressed an intent that governmental entities respond promptly to requests for public information. Tex. Gov't Code § 552.221(a). But, as the Attorney General has acknowledged, while the Act prohibits

> "unreasonable delays in providing public information, [it also] recogniz[es] that the functions of the governmental body must be allowed to continue. The interests of one person requesting information under the Open Records Act [now Public Information Act] must be balanced with the interests of all the members of the public who rely on the functions of the governmental body in question."

Tex. Att'y Gen. ORD–664, 3 (2000) (quoting Tex. Att'y Gen. ORD–467, 6 (1987)). And while the Act's fundamental purpose is to mandate the maximum disclosure of public information, it was also designed "to simultaneously protect the personal privacy of individuals." House Comm. on State Affairs, Bill Analysis, Tex. H.B. 1718, 74th Leg., R.S. (1995); *see, e.g.,* Tex. Gov't Code §§ 552.102, .109, .114, .115, .117. According to the House Research Organization, as of 2007, some Texas agencies received as many as 2,000 Public Information Act requests a year, House Research Org. Bill Analysis, Tex. H.B. 1497, House Committee Report, 80th Leg., R.S. (2007), and officials responding to those requests bear an onerous responsibility: if they disclose information that is confidential under the Act, they face criminal liability. Tex. Gov't Code § 552.352(a).[4] Moreover, public enti-

---

4. Officials who wrongfully withhold public information may also face criminal sanctions,

ties requesting an attorney general opinion must specify the exceptions that apply within the same ten-day period in which an opinion must be requested. *Id.* § 552.301(b). As the Attorney General has observed, the requirements to request an opinion and specify the applicable exceptions "presuppose[ ] that the governmental body has identified the responsive information." Tex. Att'y Gen. ORD–664, at 4 fn.2. In light of those considerations, it is reasonable to assume that the Legislature intended that public entities would have a reasonably clear idea of the information requested before the ten-day deadline begins to run.

Other provisions of the Act also weigh in favor of measuring the statutory deadline from the date an unclear or overbroad request has been clarified or narrowed. The Act permits governmental entities to impose charges for the cost of copying records, and, in certain circumstances, preparing them for inspection. TEX. GOV'T CODE §§ 552.261, .271. The governmental body must provide the person requesting information with a detailed statement itemizing all the estimated anticipated costs of complying with the request. *Id.* § 552.2615(a). If the person requesting the information does not respond to the estimate within ten business days by accepting the estimate, modifying their request, or filing a complaint with the Attorney General alleging that the governmental entity is overcharging, the request is considered withdrawn. *Id.* § 552.2615(b). A public information officer may require a deposit or payment of a bond if the estimated costs of preparing copies will exceed $100 (for bodies with

more than fifteen employees) or $50 (for entities with fewer than sixteen employees). *Id.* § 552.263(a). If a deposit or bond is required, then, for purposes of section 552.301, the request is not considered received until the entity receives the deposit or bond. *Id.* 552.263(e). This provision belies the Attorney General's contention that section 552.301's ten-day deadline is "absolute," and signals the Legislature's recognition of the potential burden responding to public information requests may place on governmental bodies. *See* Senate Research Ctr., Bill Analysis, Tex. S.B. 623, 79th Leg., R.S., 2005 ("The time and resources used in the preparation of a brief to the attorney general are not reimbursed to the governmental entity, which creates a problem when a requestor is authorized to force a governmental entity to prepare briefs for the attorney general, before payments have been made.")

None of these provisions specifically addresses the effect of a clarification request.[5] But they suggest that the Legislature envisioned an orderly process in which both the government and the requesting party will proceed with a reasonable idea of the burdens and costs each is likely to incur in connection with a request for public information. If a request is unclear or overbroad, the government's ability to identify applicable statutory exceptions to disclosure, or to prepare an accurate estimate of anticipated costs, is severely hampered; if the statutory ten-day period is merely tolled while the government awaits clarification, the government is left with little time to assess applicable exceptions or prepare any estimate

but only if they act with criminal negligence. Tex. Gov't Code § 552.353(a).

**5.** The latter provision would not apply to Hill's request as it did not become effective until 2005. *See* Act of May 27, 2005, 79th

Leg., R.S., ch. 315, §§ 2, 3 2005 Tex. Gen. Laws 938. Nevertheless, the Legislature's willingness to extend the statutory deadline until a deposit or bond is paid is suggestive.

of costs, a result that could leave both parties with less accurate information. While the Act requires governmental entities to respond promptly to public information requests, " 'promptly' means as soon as possible under the circumstances, that is, within a reasonable time, without delay." *Id.* § 552.221(a). If the circumstances are that a request is so unclear or overbroad that a governmental entity, acting in good faith, cannot understand what is requested, then it is consistent with the Act's structure to measure the time period in which an attorney general opinion must be requested from the date the request is clarified.

The regulatory background against which section 552.222(b) was enacted reinforces our construction of the statute. More than a decade before the Legislature enacted the clarification statute, the Attorney General had issued Open Records Decision 333, a decision that has never been withdrawn or overruled.[6] In that decision, the City of Houston received a request from the Houston Chronicle for "access to blotters maintained by all divisions of the Houston Police Department." Tex. Att'y Gen. ORD–333, 1 (1982). The newspaper relied on a decision holding that police blotters were public information, *Houston Chronicle Publishing Co. v. City of Houston*, 531 S.W.2d 177 (Tex.Civ. App.-Houston [14th Dist.] 1975), *writ ref'd n.r.e.*, 536 S.W.2d 559 (Tex.1976). *Id.* The City disagreed because, broadly read, the Chronicle's request included the identities of police informants. *Id.* The Chronicle and the City then engaged in a series of verbal and written exchanges in which the City sought to clarify the precise information the newspaper sought. *Id.* As a consequence of these efforts, more than ten days elapsed between the Chronicle's original request and the date the City requested an attorney general open records decision. *Id.* at 2. Because the original request was "extremely broad, and referred only to 'blotters'," the Attorney General concluded that a letter from the Chronicle precisely identifying the information it sought was the operative date to trigger the ten-day period, even though the Act contained no provision allowing a governmental entity to attempt to clarify or narrow a request. *Id.* at 2–3. Presumptively, the Legislature was aware of this opinion when it enacted section 552.222(b) in 1995. *See Tex. Dept. of Prot. & Reg. Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 176 (Tex.2004).

6. The Attorney General does not contend that the City's request for clarification was pretextual, and the City maintains that it was unaware Hill was seeking the information in exhibits F and G until it received that clarification. Open Records Decision No. 663, on which the Attorney General relied in this case, reads Open Records Decision No. 333 to apply when the responding entity "did not understand the nature of the information requested as information which could be protected from disclosure until the day [it] received the clarification." Tex. Att'y Gen. ORD–663, at 3. Although the original request in Open Records Decision No. 333 was couched in broad terms, Open Records Decision No. 663 concluded that the clarified request became the operative request because it "included excepted information not sought in the original request." *Id.* at 3. It then articulated the tolling rule that the Attorney General advocates in this case. *Id.* at 4. Ultimately, however, in Open Records Decision No. 663, the Attorney General ruled that a request for information containing certain search terms did not initiate the ten-day period in which to seek an attorney general's opinion about documents containing those terms that were in the possession of the agency's outside counsel, even though those documents were clearly public information. *Id.* at 6. The Attorney General did "not believe that the first request, which did not specify information held by [the agency's] outside counsel, served to notify [the agency] that the requestor was seeking information held not only by [the agency], but also by its counsel." *Id.*

While the opinion was not based on any explicit clarification provision, it did provide the Legislature with the view of the officer in charge of enforcing the Act that measuring a governmental body's response time from the date an unclear or overbroad information request is clarified would be consistent with the Act's overarching purposes. It is not unreasonable to assume that the Legislature anticipated that section 552.222(b) would have the same effect on the ten-day deadline.

Construing the statute so that clarification of an unclear or overbroad information request resets the statutory ten-day deadline would not be contrary to the Legislature's mandate that the Act be construed in favor of granting a request. TEX. GOV'T CODE § 552.001(b). To the contrary, as we have observed, allowing a governmental entity ten days from the time an unclear or overbroad request is clarified only helps ensure that the response will be meaningful, providing the requestor with the information he or she actually wants. As the Attorney General has recognized, if a request is vague or overbroad, a governmental body cannot "accurately identify and locate the requested items." Office of the Attorney General of Texas, PUBLIC INFORMATION 2008 HANDBOOK, ix. And, in sections 552.263 and 552.2615 of the Act, the Legislature itself has attempted to balance the policy of broad disclosure against the burden that may be placed upon scarce government resources in attempting to respond to extremely broad information requests.

■ We agree with the Attorney General that a governmental entity should not be allowed to use requests for clarification in bad faith merely to delay production of public information. But in this case, it is undisputed that the City acted in good faith in asking Hill to clarify or narrow his broad request for public information.

Once he did, the City promptly responded. There is nothing to indicate that the City was attempting to drag out the process by its request for clarification. Under these circumstances, the ten-day period for requesting an attorney general opinion ran from the date of Hill's response, and the City's request for an attorney general opinion was timely. Because we conclude that the ten-day period in this case ran from the date of Hill's clarification, we do not reach the City's argument that Hill's response asked for "additional items" that were not included in his original request, or its alternative argument that the attorney-client privilege is itself sufficiently compelling to overcome the public-information presumption that inheres when an attorney general's opinion is not timely requested.

## III. Conclusion

We reverse the court of appeals' judgment and render judgment that the information contained in exhibits F and G is excepted from disclosure under the Act.

Justice WAINWRIGHT filed a dissenting opinion, in which Justice JOHNSON joined.

Justice WILLETT did not participate in the decision.

Justice WAINWRIGHT, joined by Justice JOHNSON, dissenting.

The introductory section of the Public Information Act (PIA) announces the policy of the State of Texas on the peoples' right of access to public information.

Under the fundamental philosophy of the American constitutional form of representative government that adheres to the principle that government is the servant and not the master of the people, it is the policy of this state that each person is entitled, unless otherwise ex-

pressly provided by law, at all times to complete information about the affairs of government and the official acts of public officials and employees.

Tex. Gov't Code § 552.001. This laudable objective of the PIA, to ensure transparency in public affairs, does not require that all public information be routinely disclosed. Sensibly, some data defined as public information may be withheld under the statute's terms, but the PIA requires that exclusions from disclosure be timely raised with the Office of the Attorney General. *Id.* § § 552.101, .301. A public entity has ten business days to request the Attorney General's opinion if it desires to withhold public information. *Id.* § 552.301. If the governmental body fails to meet this statutory deadline, the standard for withholding the public information from disclosure rises from merely "confidential" to the governmental entity having to establish a "compelling reason" for nondisclosure. *Id.* § 552.302.

There is no dispute that the information at issue in this case is public information, and it may have been excepted from disclosure. However, the City of Dallas did not request a written opinion from the Attorney General on its desire to withhold the public information until seventeen business days after it received the request for disclosure. The Court holds that eight of the days need not be counted because the clock does not begin on the deadline to request an attorney general opinion until after the public's request for information is clarified, even though the PIA states that the ten-day period begins when the request is "received." The Court concludes that the City's request to the Attorney General was timely and the City need not turn over the public information requested because the lower standard for withholding the public information was met. Because the Court's approach hinders the Legislature's goal of providing the people with prompt access to public information, *see id.* § 552.221(a), and creates an easy manner to delay such access, contrary to the PIA's purpose and language, I respectfully dissent.

## I. Background

On May 16, 2002, the City of Dallas received a request from James F. Hill, II for "[a]ny and all information pertaining to the City of Dallas 'Assessment Center Process' for uniform positions of the Dallas Fire and Police Departments."[1] On May 22, 2002, the City sent a letter to clarify the request, asking: "Are you seeking information regarding specific assessment centers and if so for what period of time?"[2] Hill responded on May 28, 2002, specifying that he requested information for the year 2000 for the positions of Dallas Fire Rescue Fire Lieutenant and Captain. On June 10, 2002, the City requested from the Office of the Attorney General a decision on whether some of the information sought, specifically a memorandum designated Exhibit F and two memoranda designated Exhibit G, could be withheld under the privilege for attorney-client communications. The Office of the Attorney General concluded that the City's request was untimely and that the City had

---

1. The PIA precludes the governmental entity from inquiring about the reason for the request, so the parties do not provide the reason. *See* Tex Gov't Code § 552.222.

2. Police and fire departments use assessment centers to evaluate potential candidates for promotion. *See* Paul Lepore, *Firefighter's Five–Step Guide to a Promotion*, Fire Link, http://www.firelink.com/bene fits/articles/1825—firefighters-five-step-guideto-a-promotion (last visited Feb. 16, 2010). It typically includes a tactical scenario and other exercises, an oral interview and presentation, and an employee counseling session. *Id.*

not presented a compelling reason to withhold the information. Tex. Att'y Gen. LA–4450 (2002). The Attorney General therefore directed the City to disclose the information. Claiming the information was protected from disclosure by the attorney-client privilege, the City sought declaratory judgment in district court in Travis County to withhold the documents from disclosure. The trial court issued findings of fact and conclusions of law in its final judgment ordering disclosure. The court of appeals also concluded that the City's request was untimely, held that it had not established a compelling reason to withhold the information, and affirmed the trial court's order of disclosure. The Court's opinion reaches the contrary result.

## II. The Public Information Act Provides for Prompt Disclosure of Public Information.

The PIA codifies and strengthens the policy of the State of Texas that the people are entitled to "complete information" about the affairs of government. Tex. Gov't Code §§ 552.001, .021. From this initial premise, the statute then allows selected exceptions to the right to complete information.

When a member of the public requests public information, the governmental entity "shall promptly produce public information." Id. § 552.221(a). " '[P]romptly' means as soon as possible under the circumstances, that is, within a reasonable time, without delay." Id. If the entity believes that any of the requested information is protected from disclosure by the exceptions in Subchapter C of the PIA, it must request, within ten business days, an opinion from the Attorney General on whether the information may indeed be withheld. Id. § 552.301(a), (b). The provisions of Subchapter C set forth the exceptions from disclosure for public infor-

mation. See id. §§ 552.101–.151. These are the standards the Office of the Attorney General considers when it receives compliant requests by governmental bodies to withhold public information under section 552.021.

When the governmental body fails to request an attorney general decision on withholding certain public information within the PIA deadline, the statute establishes a presumption that the information must be publicly disclosed. Id. § 552.302. The information then may only be withheld if the governmental body establishes a "compelling reason" to do so. Id. The Attorney General opined that the City of Dallas did not timely file its request for a decision on the asserted attorney-client privilege, an issue I now consider.

## III. The City's Request for a Decision from the Attorney General Was Untimely.

On May 16, 2002, Dallas received Hill's request for all information pertaining to the City of Dallas Assessment Center Process for uniform positions of the Dallas Fire and Police Departments. Four business days later, the City requested from Hill a clarification of his broad request. The City received Hill's clarification four business days after its request. The City waited another nine business days thereafter, until June 10, to request an attorney general opinion. Thus, the City did not request a decision from the Attorney General until seventeen business days (twenty-five calendar days) after it received Hill's original request. If the four business-day period during which the City sought clarification is excluded, the City's request to the Attorney General was not sent until thirteen business days after receiving Hill's original May 16 request.

Section 552.301(b) expressly starts the clock ticking for the ten business-day

deadline on the date the City "receives" the written request. TEX. GOV'T CODE § 552.301(b). Section 552.222(b) allows a governmental body to seek clarification upon receipt of an unclear or overbroad request for information, but it does not address how a clarification affects the ten-day deadline. *Id.* § 552.222(b); *see also* Tex. Att'y Gen. ORD–663, 3 (1999) ("[W]hile the PIA expressly permits a governmental body to seek clarification and narrowing of a request, it is silent as to the effect of such inquiry on the PIA's deadline for requesting a decision."). The City claims its request was timely because, upon receipt of Hill's clarification, it was treated as a new request, and the ten-day period reset. The Attorney General asserts, and the court of appeals reasoned, that the City's request was untimely because the time period was only tolled for the four business days between the City's request for Hill's written clarification and its receipt of that clarification.

The custom and practice in the Office of the Attorney General over the years have provided a consistent and rational manner for handling clarification requests. The Office of the Attorney General issues thousands of PIA rulings per year. In 2007 alone it issued 17,000 rulings. Between 2001 and 2007, the Attorney General issued approximately 4,515 rulings regarding claims of attorney-client privilege. Brief of Respondent–Attorney General at 29, 31, *City of Dallas v. Greg Abbott, Attorney General of Tex.,* No. 07–0931 (Tex. May 9, 2009). Attorney general opinions, which this Court has recognized as persuasive, provide that a governmental entity's good faith attempt to clarify or narrow a request tolls the time period for the information requested; conversely a request for new information that is included in a clarification starts the period anew only for that new information. *See Holmes v. Morales,* 924 S.W.2d 920, 924

(Tex.1996) (explaining that attorney general opinions are "persuasive, but not controlling" authority); *Doe v. Tarrant County Dist. Attorney's Office,* 269 S.W.3d 147, 152 (Tex.App.-Fort Worth 2008, no pet.) (giving special "due consideration" to attorney general decisions involving public information because the Legislature requires the Attorney General to issue written opinions advising governmental entities); Tex. Att'y Gen. ORD–663; Tex. Att'y Gen. LA–12245 (2009) (finding that a clarification was not a new request resetting the time period); Tex. Att'y Gen. LA–9346 (2007) (finding a request untimely notwithstanding the agency's request for clarification from the requestor); Tex. Att'y Gen. LA–2258, 1–2 (2003) (finding that the tolling from clarification made request timely). If the request is simply too broad and the governmental entity seeks to narrow it, the governmental body does not get a new ten-day period for the information included in the original request. For that information, the clock is tolled the period between the time the governmental body requests clarification and the time the governmental body receives the clarification response. *Id.*

The Attorney General has recognized that governmental bodies that genuinely need clarification of a request should not be threatened with loss of their statutory time to seek an attorney general opinion on an exception from disclosure. Tex. Att'y Gen. ORD–663 at 5. It stands to reason that clarification and narrowing, sought in good faith, should be encouraged. *See id.* For the last decade, the opportunity for reasonable clarification has been incorporated in the Attorney General's application of tolling principles to requests for clarification by governmental entities. *See id.* The public entity thereby gains more time to gather the alleged privileged information during the clarifica-

tion period but must request the attorney general decision within ten business days plus the period during which the clock is tolled for a good faith clarification request. *See id.*

Hill's clarification limited the request to the year 2000 and to the positions of Dallas Fire Rescue Fire Lieutenant and Captain. It also requests a list of information: "[a]ny written documents on 'how Assessment Process was to be administered' for the above positions and time frame"; "[j]ob analysis[ ] for the positions of Fire Lieutenant and Fire Captain and date of each analysis"; "[a]ny contract between Booth and the City of Dallas/Civil Service to conduct the Assessment Center for the Dallas Fire department positions Fire Lieutenant and Fire Captain"; and "[a]n explanation on the 'mirroring' of percentages between Fire Prevention and Fire Operations testing for the same period." This information would be subsumed by his original request for information pertaining to the City of Dallas 'Assessment Center Process' for uniform positions of the Dallas Fire and Police Departments. Indeed, the City does not contend that the three documents it seeks to withhold, in Exhibits F and G, were not included in the original request from Hill.[3] Accordingly, the ten business-day period should be tolled for the intervening time between the government's clarification request and Hill's response. Thus, excluding the four business days during which the time period was tolled, the City's request for a decision from the Office of the Attorney General was not sent until the thirteenth business day after Hill's May 16 request. The City's request was not timely.

Asserted exceptions to disclosure of public information had been handled in this manner for years when the City received Hill's request. *See* Tex. Att'y Gen. ORD–663 (1999). The City was charged with knowledge of the law yet failed to follow it. *See* Tex Gov't Code § 552.012 (mandating training of public information officers); *Osterberg v. Peca,* 12 S.W.3d 31, 38 (Tex. 2000) (holding that ignorance of the law is not an excuse for violation of a statute).

Tolling the ten-day period during the clarification process for information in the original request furthers the PIA's objective of promptly providing, "without delay," the public with information from its servants—governmental entities. *See* Tex. Gov't Code § 552.221(a). Resetting the time period in this circumstance delays disclosure of public information. It imposes no additional incentive to timely produce information sought within the original request that is also sought in the clarification. *See Indus. Found. of the S. v. Tex. Indus. Accident Bd.,* 540 S.W.2d 668, 687 (Tex.1976) (holding that "the Act does not allow either the custodian of records or a court to consider the cost or method of supplying requested information in determining whether such information should be disclosed"). Moreover, tolling the time period for this information that was included in the original request is the established method for handling clarifications under

---

**3.** In its brief on the merits, the City notes that the court of appeals framed this issue as "whether the information [Exhibits F and G] sought to be excluded from public disclosure was included in the first request." The appellate court concluded that it was. The City contends that the court should have considered the different question of what information Hill "really wanted" or "sought" because he "did not actually want all information pertaining to the assessment center process." The City argues that Hill's initial request did not specify that he wanted Exhibits F and G, but it does not deny that Exhibits F and G were included within the scope of Hill's first request. The Attorney General points out that Exhibits F and G must have been included in Hill's original request because the clarification narrowed the scope of documents sought.

the PIA. *See* Tex. Att'y Gen. ORD–663 at 1. The Court's approach resets the clock for all information in the original request each time a clarification is sought, and it is not justified where that clarification only narrows the scope of the original request for the benefit of the governmental entity. *See* Tex. Att'y Gen. LA–12245 (discussing *multiple clarification requests*). Surely, where new information is sought in a clarification, the entity should receive ten business days to seek an attorney general opinion. But it is inconsistent with the language and purpose of the PIA to extend the statutory deadline ten business days beyond the time already allotted for public information requested initially. The Court's holding ignores the date of receipt of the original request and, contrary to the statutory mandate, inserts an unnecessary delay into the process. This allows both inadvertent delay of disclosures about government affairs and easy manipulation of the deadline through clarification requests.

The Office of the Attorney General distinguishes between new requests framed as clarifications (for which a new ten business-day period applies), clarifications of public information within the scope of initial requests (for which tolling applies), and new information sought as part of legitimate clarifications of original information requested (for which the ten business-day period resets for the new information and tolling applies to information within the scope of the original request). *See* Tex. Att'y Gen. LA–4352, 1 (2005). The Court not only reverses a decades-old policy of tolling for unclear requests but creates a new category of "vague or overbroad" requests for public information. The Attorney General's approaches addressed the various circumstances while insisting on compliance with the Legislature's mandate to address open records requests "without delay." The Court's holding could insert delays and increase costs to all parties involved by shifting the emphasis in PIA disclosure disputes from defining "compelling reason" for nondisclosure (in the case of untimely requests) to squabbles over whether non-lawyer members of the public precisely worded their requests to governmental entities for admittedly public information. It is problematic to insert into the Legislature's PIA scheme of disclosure a bane that exists in civil litigation: incessant disputes over the wording of discovery requests.

## IV. The Higher, Compelling Reason Standard Governs the City's Untimely Request to Withhold Public Information.

Because the City's request for an attorney general opinion on withholding Exhibits F and G was untimely, I address whether the asserted reason for disclosure satisfied the PIA's elevated compelling reason standard.

The only exceptions to required disclosure of public information under Subchapter C that the City may raise in this suit are exceptions it raised with the Attorney General in its request for decision contained in its letter of June 10, 2002. *See* TEX GOV'T CODE § 552.326. The only exception the City raised in the June 10 letter was section 552.107(1) of Subchapter C concerning "information that . . . an attorney of a political subdivision is prohibited from disclosing because of a duty to the client. . . ." *Id.* § 552.107(1). Whether Exhibits F and G are subject to public disclosure depends on the interpretation of the exception for attorney-client privileged information in Subchapter C of the PIA. *See id.* To simply assert the exception, however, the City must have requested a decision from the Attorney General on the privilege within ten business days from the date of receipt of the request. *Id.* § 552.301. If the City's request was dilato-

ry, Exhibits F and G would be presumed subject to public disclosure and "must be released unless there is a compelling reason to withhold the information." *Id.* § 552.302.

The City argues that it satisfies the compelling reason standard by merely asserting the attorney-client privilege as an exception to disclosure. If so, the City could except public information from disclosure merely by asserting the same justification it was late in raising with the Office of the Attorney General. But such an interpretation contradicts the express language of the statute and violates its purpose.

The very use of the word "compelling" in this context indicates the intent to impose a tougher standard for violation of the deadline. Precepts of statutory construction dictate that because the Legislature did not define the word "compelling" in the PIA, we interpret the word according to its plain and common meaning. *See McIntyre v. Ramirez,* 109 S.W.3d 741, 745 (Tex.2003). The common meaning of "compelling" is "demanding attention" or "respect." COMPACT OXFORD ENGLISH DICTIONARY 300 (2nd ed. 1991). To be compelling, a justification must be more than simply legitimate or good, it should be persuasive to the point of demanding respect or acquiescence.

The City argues that the attorney-client privilege is always a "compelling reason" to prevent disclosure because it is the oldest of the privileges for confidential communications known to the common law and is vital to encourage clients to confide in their attorneys. *See Ford Motor Co. v. Leggat,* 904 S.W.2d 643, 647 (Tex.1995). The City's interpretation of the section 552.301 compelling reason standard would require nothing more to keep public information secret than a late assertion of a legitimate justification, notwithstanding the statutory mandates. There are several other reasons this conclusion is incorrect.

## A. The Legislature's Adoption of the Compelling Reason Standard in the PIA Codified the Attorney General's Application of the Standard.

In considering the 1999 proposed amendment to the PIA that would include the compelling reason standard, the Legislature was not acting in a vacuum. The Office of the Attorney General originated the compelling reason standard long before the Legislature amended the statute to incorporate it.

Every Attorney General in the thirty-five years since the PIA was enacted has applied and enforced the heightened compelling reason standard. *See* Tex. Att'y Gen. ORD–26 (1974) (Attorney General John Hill); Tex. Att'y Gen. ORD–319 (1982) (Attorney General Mark White); Tex. Att'y Gen. ORD–552 (1990) (Attorney General Jim Mattox); Tex. Att'y Gen. ORD–630 (1994) (Attorney General Dan Morales); Tex. Att'y Gen. LA–3474 (2001) (Attorney General John Cornyn); Tex. Att'y Gen. LA–6858 (2002) (Attorney General Greg Abbott). In 1974, the Attorney General reasoned that a late request for decision meant that the resulting presumption that information must be disclosed could only be overcome by a "compelling demonstration that the information requested should not be released to the public." Tex. Att'y Gen. ORD–26; *see also* Tex. Att'y Gen. ORD–552. That office affirmed the application of this standard in several instances. *See* Tex. Att'y Gen. ORD–319; Tex. Att'y Gen. ORD–150 (1977); Tex. Att'y Gen. ORD–34 (1974). In 1994, an attorney general opinion addressed the very issue before this Court. "The mere fact that the information is within the attorney-client privilege and

thus would be excepted from disclosure under section 552.107(a) of the Open Records Act [now PIA] if the governmental body had made a timely request for an open records decision does not alone constitute a compelling reason to withhold the information from public disclosure." Tex. Att'y Gen. ORD–630 at 7. The office confirmed that ruling in 2001. *See* Tex. Att'y Gen. LA–5561 (2001). In 1999, before the PIA was amended that year, the Attorney General again explained that the compelling reason standard applied to public information for which the request for decision was late. Tex. Att'y Gen. LA–725 (1999) (Attorney General John Cornyn). And these attorney general opinions consistently apply a higher standard to allow this type of exception to withholding information.

In addition, several courts of appeals have adopted the Attorney General's standard for deciding PIA disputes arising out of a late request for an attorney general opinion. *Doe,* 269 S.W.3d at 154 (stating that "statutory and case law support the AG's general rule" and adopting that standard); *Jackson v. Tex. Dep't of Pub. Safety,* 243 S.W.3d 754, 758 (Tex.App.–Corpus Christi 2007, pet. denied) (adopting the Attorney General's compelling reason standard); *Hancock v. State Bd. of Ins.,* 797 S.W.2d 379, 381 (Tex.App.-Austin 1990, no pet.) (citing attorney general opinions, recognizing the compelling reason standard, and holding that the agency must do more than present a "mere showing of the applicability of one of the statutory exceptions" to overcome the presumption of openness). *But see City of Garland v. Dallas Morning News,* 969 S.W.2d 548, 554–55 (Tex.App.-Dallas 1998) (refusing to adopt the "compelling demonstration test" because the court did not find *"Hancock* and the attorney general opinions" adopt-

ing that test persuasive), *aff'd on other grounds,* 22 S.W.3d 351, 364 (Tex.2000) (plurality opinion) (declining to address the applicability of the compelling reason standard because the information at issue was subject to disclosure regardless of that analysis). As the Attorney General and these courts of appeals have consistently held, to uphold a late request to except public information from disclosure based on the attorney-client privilege requires more than reasserting the same privilege. *See* Tex. Att'y Gen. ORD–676 (2002); Tex. Att'y Gen. LA–5561; Tex. Att'y Gen. ORD–630.

It is thus not surprising that the Legislature continued this established and predictable policy. At a Senate hearing on amending the PIA in 1999 to explicitly incorporate the compelling reason standard, the author of the bill, Senator Corona, explained that the amendment "will require the governmental body to forfeit any discretionary exceptions and would require the release of the information," consistent with the Attorney General's previous decisions. The author then introduced the chief of the open records division of the Office of the Attorney General, who explained:

> [T]he attorney general's office has interpreted that this—and basically this codifies a long standing interpretation of the attorney general's office, that I think stretches all the way back from 1977 in Open Records Decision 150—and the attorney general has determined that, uh, compelling reasons would be if if [sic] the information were made confidential by another source of law outside the Open Records Act ... as well as if release of the information would adversely affect the privacy or property interest of third parties.[4]

4. Actually, the standard was created by the        attorney general's office in 1974 in Open Rec-

Hearing on S.B. 277 Before the Senate Committee on State Affairs, 76th Leg., R.S. (Partial Transcript at 2, March 11, 1999); Act of September 1, 1999, 76th Leg., R.S. ch. 1319, § 21, 1999 Tex. Gen. Laws 4509; *see also Phillips v. Beaber*, 995 S.W.2d 655, 658 (Tex.1999) (stating that courts presume the Legislature acts with knowledge of the accepted legal meanings of terms); *McBride v. Clayton*, 140 Tex. 71, 166 S.W.2d 125, 128 (1942) (explaining that "statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it").

Since the Legislature's 1999 addition of the compelling reason standard to the PIA, the Attorney General has affirmed its interpretation, and the Legislature has not responded negatively to it. Tex. Att'y Gen. ORD–676. The Court has explained that it is persuasive that the Legislature had amended the PIA several times without responding negatively to attorney general interpretations. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 366 (Tex.2000).

## B. The Compelling Reason Standard Provides Incentives for Expeditious Action as Contemplated by the PIA.

The overall scheme of the statute indicates the Legislature's goal of preventing open government requests from languishing in the bureaucratic process due to dilatory requests for decisions and slow responses. *See, e.g.*, § 552.301(b) (requiring governmental entities to request decisions on exceptions from disclosure of public information within ten business days); § 552.306 (requiring the Attorney General to render a decision "not later than the 45th business day after the date the Attorney General received the request").[5] To accomplish this goal of the PIA, a "compelling reason" must be a higher and more demanding standard to create a persuasive incentive for governmental entities to comply with the PIA's expeditious time frames. The Court's holding undercuts the incentive to be prompt by allowing an easy manner to delay the decision to produce public information. Under the City's position, a city that prioritizes open government and works diligently to meet the deadline for a request for decision on an attorney-client privilege issue is treated no differently than a city that is not diligent in attempting to respond to a PIA request and simply asks for a "good faith" clarification of a word or phrase in a request.

To demonstrate a compelling reason to withhold information, the Attorney General's longstanding interpretations require that the governmental entity assert the attorney-client privilege along with another special circumstance that increases the consequences of disclosure, such as that the interests of third parties would be harmed or that the governmental entity is prohibited from disclosing the information by other law.[6] *See* Tex. Att'y Gen. LA–

---

ords Decision No. 26, which explained there must be a "compelling demonstration that the information requested should not be released to the public," decided by the Honorable John L. Hill.

**5.** In an amicus brief from Senator John Cornyn, former Texas Attorney General, supporting the current Attorney General's position, he explains that the Texas Public Information Act is widely regarded as the strongest and most successful open government law in the country particularly because of its deadlines and enforcement mechanisms and that the Federal Act is largely based on the Texas PIA, citing 151 Cong. Rec. S 1525–26 (Feb. 16, 2005).

**6.** The fact that the attorney-client privilege exists in other law does not mean that the City could not waive it. *See* Tex. Att'y Gen. ORD–630. The attorney-client privilege benefits the City, as the client, and therefore can be waived by the City. *Id.* However, if the City

5561; Tex. Att'y Gen. ORD–630; Tex. Att'y Gen. ORD–26. I agree that the two bases for demonstrating compliance with the compelling reason standard are reasonable. However, application of the standard should also consider circumstances in which the disclosure of such privileged information would likely inflict substantial harm to the public or the entity. In this case, without more, the City's privilege fails the compelling reason standard. However, in other circumstances, disclosure of privileged attorney-client communications could cause substantial harm to the public entity and add substantial cost or even harm the public that the PIA seeks to keep informed.

## C. The City's Position Would Delete the "Compelling Reason" Standard From the Statute in These Situations.

The City argues that attorney-client privilege is always a compelling reason to prevent disclosure. *In re City of Georgetown*, 53 S.W.3d 328, 332–33 (Tex.2001) (quoting *Leggat*, 904 S.W.2d at 647). That holding essentially means that a governmental entity could either intentionally or unintentionally make a late request to the Attorney General seeking an exception from disclosure and still not have any higher burden to except information from disclosure. I disagree that the importance of the privilege means that a statute or

rule cannot provide for waiver of the privilege or elevate the standard to rely on it. *See, e.g.*, Tex.R. Civ. P. 193.3(d) (stating that a party who inadvertently discloses information waives the attorney-client privilege if it does not assert the privilege within ten days of disclosure); Tex.R.App. P. 33.1(a); *see also In re Christus Spohn Hosp. Kleberg*, 222 S.W.3d 434, 439–41 (Tex.2007); *In re Living Ctrs. of Tex., Inc.*, 175 S.W.3d 253, 259–60 (Tex.2005). The City waived the straightforward application of the attorney-client privilege by not requesting a decision within ten business days and should not be able to overcome that waiver by reasserting the same privilege.[7]

It is important to remember that the City retains control over the nondisclosure of otherwise privileged information if it simply abides by the PIA's deadlines. This in no way diminishes the importance of the attorney-client privilege; instead, I believe that the City must follow the procedures specifically mandated by the PIA in order to assert it without having to establish a compelling reason. The procedure in section 552.301 is not a trap for the unwary that could catch a conscientious governmental official off guard.[8] An action as simple as placing a letter to the Attorney General with a short request for a decision in the United States mail, first class, within ten business days after receiving the public information request, sat-

were claiming a non-discretionary exception, such that the City were actually prohibited from disclosing it at the risk of penalty, that exception would be a compelling reason and satisfy the statute.

7. The Attorney General has held in multiple decisions that a governmental entity waived privileges. *See, e.g.,* Tex. Att'y Gen. ORD–663 (holding that a governmental body waived the attorney client privilege, the work product privilege, and the litigation exception by missing the deadlines in 552.301); Tex. Att'y Gen.

LA–5561 (same); Tex. Att'y Gen. ORD–400 (1983) (holding that a governmental body waived the work product privilege by showing the information to the members of the public); Tex. Att'y Gen. ORD–325 (1982) (holding that a governmental body waived exceptions to disclosure by not raising them).

8. In fact, all public officials have been required since 2006 to complete a training regarding the government's responsibilities under the PIA. *See* Tex. Gov't Code § 552.012.

isfies the statute. *See* Tex. Gov't Code § 552.308. The likely reason the entity would not comply with this requirement is simply because it does not have a system in place to handle these requests quickly and efficiently, which is the harm the Legislature attempted to remedy in the statute by training all public officials in the requirements of the PIA and explicitly requiring prompt responses to the people for public information.

## V. Conclusion

The Legislature requires disclosure of public information and prompt resolution of exemptions from disclosure. Because the City failed to comply with the requirements to withhold public information from disclosure, I respectfully dissent and would hold that the PIA requires the City to disclose the public information.