IN THE SUPREME COURT OF TEXAS
 
════════════
No. 
09-0530
════════════
 
Texas Department of Public 
Safety, Petitioner,
 
v.
 
Cox Texas Newspapers, L.P., 
and Hearst Newspapers, L.L.C., Respondents
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the Third 
District of Texas
════════════════════════════════════════════════════
 
 
Argued September 15, 2010
 
 
            
Justice Wainwright, joined by Justice Johnson, concurring in the 
judgment.
            
The media requested vouchers that detail expenditure of public funds for 
the governor’s security detail when he travels. Because it concerns how the 
government spends taxpayer monies, the information in vouchers is not just 
“public information” under the Public Information Act (PIA), it is “core” public 
information, with a greater emphasis on disclosure than other public 
information. See Tex. Gov’t Code § 
552.022(a). The Texas Department of Public Safety argues 
that the information should not be disclosed, even though it is core public 
information, because of the risk to the safety of elected officials. There is no 
express exception to disclosure for this core public information. This tension 
resulted in this Court concluding that it may establish judge-made exceptions to 
the PIA’s required disclosure of information to the public, contradicting the 
unanimous determination in our precedent Industrial Foundation of the South 
v. Texas Industrial Accident Board. See 540 S.W.2d 668, 682 (Tex. 
1976) (plurality op.) (“We decline to adopt an interpretation which would allow 
the court in its discretion to deny disclosure even though there is no specific 
exception provided . . . .”); Id. at 692 (Reavley, J., dissenting) (“It was not the intention of the 
Legislature to turn over the administration of the Open Records Act to the 
judiciary.”). The Court concludes that it is “not bound by the Legislature’s 
policy decisions” in deciding common law exceptions to the statute, leaving no 
apparent boundaries on new common law exceptions to the legislated disclosure 
requirements in the PIA that courts may now create. ___ S.W.3d 
___.
            
Further complicating the case, the trial court made an express finding 
that “[p]ublic disclosure of the information in the 
vouchers requested by [the media representatives] would not put any person in an 
imminent threat of physical danger or create a substantial risk of serious 
bodily harm from a reasonably perceived likely threat.” The Court acknowledges a 
lack of expertise in such matters and credits the law enforcement testimony that 
disclosure of the vouchers would create a threat of injury. While I agree with 
the Court’s strong desire to keep public officials safe, once the Legislature 
weighed in, the question of keeping public information from the people is not 
one for the courts. The Court should not judicially create an exception to 
disclosure that contradicts the Legislature’s expressed intent in the PIA. I 
cannot join the Court’s opinion, but because I believe that DPS argued, and the 
trial court accepted, an exception not allowed by law, I would remand in the 
interests of justice for the trial court to consider other exceptions grounded 
in “other law.”
I. Background
            
The Public 
Information Act contains a comprehensive scheme arming the public with statutory 
mandates for the government to disclose information “collected, assembled, or 
maintained under a law or ordinance” or in connection with business by or for a 
governmental body, and it is to be liberally construed to grant requests for 
information. Tex. Gov’t Code §§ 552.001(b), 
.002(a). All such information is subject to disclosure 
unless it is either later excepted from the definition 
of “public information” or it falls under an exception to disclosure. See 
id. §§ 552.101–.151; cf., e.g., Tex. Elec. Code § 13.004(c) (defining certain voter registration 
information as confidential and not “constitut[ing] public information” for purposes of the 
PIA). “Public information” may be excepted from disclosure under Subchapter C, or may be 
prohibited from disclosure if the information is deemed “confidential.” Tex. Gov’t Code §§ 552.007, .101, 
.352.
            
There is, however, another level of “public information.” Members of this 
Court and the Attorney General’s Office have, in the past, called it “super 
public” information; today the Court calls it “core public information.” 
See ___ S.W.3d ___; In re City of Georgetown, 53 S.W.3d 328, 341 
(Tex. 2001) (Abbott, J., dissenting); Tex. Att’y Gen. 
OR2004-7388. This is the type of public information at the core of government 
functions, generally relating to laws actually enacted, decisions of the 
judiciary, votes of the Legislature, and how the government spends the people’s 
money. See Tex. Gov’t Code §§ 552.022, .0221, 
.0225. As such, core public information is not subject to 
the routine exclusions in Subchapter C, but may be withheld from the public only 
if the information is “expressly confidential under other law.” Id. § 552.022(a). This rule was important enough 
that the Legislature specifically commanded courts to comply with it. Section 
552.022(b) mandates that “[a] court in this state may not order a governmental 
body or an officer for public information to withhold from public inspection any 
category of public information described by Subsection (a) or to not produce the 
category of public information for inspection or duplication, unless the 
category of information is expressly made confidential under other law.” Id. § 552.022(b).
            
Reporters representing the Austin American-Statesman, San 
Antonio Express-News, and the Houston Chronicle sent requests 
to DPS officials. One reporter requested “travel vouchers for Gov. Rick Perry’s 
security detail for all trips out of state during two time periods. The first 
time period is January through December 2001. The 
second time period is January through June 2007.” Another requested “access to 
or copies of travel vouchers for Gov. Rick Perry’s security detail.” The parties 
acknowledge that these requests include “information in an account, voucher, or 
contract relating to the receipt or expenditure of public or other funds by a 
governmental body.” See id. § 552.022(a)(3). As such, the information requested is core public 
information. Id. 
§ 552.022.
II. 
Disclosure of Core Public Information as
“Expressly Confidential Under Other Law”
 
            
Compared to the dozens of exceptions for disclosure of “regular” public 
information, there is only one exception to the PIA’s mandated disclosure of 
core public information—if it is “expressly confidential under other law.” 
Id. The text of section 552.022’s narrow exclusion contains three facial 
requirements: the information must be “confidential,” such designation that the 
information is confidential must be “express,” and the source of the 
confidential designation must be “other law.” This requirement was put in place 
by a 1999 amendment. See Act of May 25, 1999, 76th Leg., R.S., ch. 1319, § 5, 1999 Tex. Gen. Laws 4501. Prior to the 
amendment, section 552.022 of the Government Code merely recognized the types of 
information enumerated in section 552.022 were “public information.” It 
recognized that vouchers were public information “if the information is not 
otherwise made confidential by law.” Id. But the amendment added language 
to the introductory clause, requiring that all types of core public information 
enumerated in section 552.022 are public information “and not excepted from 
required disclosure under this chapter unless they are expressly confidential 
under other law.” Id.[1] This 1999 amendment was heralded as a 
“true success” in providing a “citizen . . . 
full and complete information regarding official acts of those who represent 
them and the affairs of government.” Rick L. Duncan, No More Secrets: How 
Recent Legislative Changes Will Allow the Public Greater Access to 
Information, 1 Tex. Tech. J. Tex. 
Admin. L. 115, 133 (2000). We should give effect 
to all the words in a statute, and to changes in the words of legislative acts. 
See Indep. Life Ins. Co. of Am. v. 
Work., 77 
S.W.2d 1036, 1039 (Tex. 1934). As discussed below, the Court’s opinion does not, 
as it ignores the “express,” “confidential,” and “other law” requirements of the 
statute.
A. Other 
Law
            
“Other law” means law other than the Public Information Act. City of 
Georgetown, 53 S.W.3d at 332–33. I disagree with 
the Court’s assertion that “other law” exceptions to disclosure of core public 
information can mean “ judicial decisions.” ___ S.W.3d ___. The Court cites as authority for its holding 
the case of In re City of Georgetown, a case in which the Court examined 
whether rules in the Texas Rules of Civil Procedure regarding attorney-client 
privilege constituted “other law” under section 552.022. Id. (citing City of Georgetown, 52 S.W.3d at 
332). In City of Georgetown, the Court held that because our 
enacted rules of court “have the same force and effect as statutes,” and the 
rules were derived from previously enacted statutes, such rules constitute 
“other law” under section 552.022. 53 S.W.3d at 332 (quotation 
omitted). The Court today misreads City of Georgetown, 
asserting that it serves as the basis for creating common law exceptions to 
the PIA. The Court cites no other Texas authority for this holding.
            
Other provisions in the PIA also indicate that judicial decisions should 
not be “other law” for the purpose of the section. See Molinet v. Kimbrell, ___ 
S.W.3d ___ (Tex. 2011) (noting that we examine the “entire act” to glean the 
meaning of a statute’s text (citations and quotations omitted)). In section 
552.101 of the PIA, the Legislature excepted from 
disclosure information that is “considered to be confidential by law, either 
constitutional, statutory, or by judicial decision.” Tex. Gov’t Code § 552.101. This provision 
applies to “public information” defined and disclosable pursuant to section 552.021, and not to the core 
public information delineated in section 552.022. If we were to interpret “other 
law” in section 552.022 to include law made pursuant to a judicial decision, we 
would effectively apply section 552.101’s “judicial decision” exception to 
disclosure to core public information. This is contrary to the Legislature’s 
explicit statement that core public information is “not excepted from required disclosure under this chapter,” 
including section 552.101. Id. § 552.022 (emphasis added). The most 
logical reading, then, is that “other law” must mean other statutory law where 
the Legislature has declared certain information confidential,[2] or rules of court drafted by this Court 
that are commensurate with statutes. See City of Georgetown, 53 S.W.3d at 333.
            
The Court argues that the “other law” in this case is the “individual[’s] right to be free 
from physical harm,” as manifested in the tort of battery. ___ 
S.W.3d ___. The Court posits that because physical safety is “the primary 
concern of every government,” and the PIA protects private information, then it 
must surely protect physical safety as well. Id. at ___ (quoting 
United States v. Salerno, 481 U.S. 739, 755 (1987)). The reasoning is a 
sound policy argument in drafting legislation. Elected officials should not be 
subjected to harm by dangerous persons whose task may be made easier through 
public information requests. But the policy decision of how to satisfy that 
objective is not ours. The Legislature has made nondisclosure of the core public 
information at issue dependent on it being specifically designated confidential 
by rules or statutes outside of the PIA.
            
Further, this Court has never held that other torts would protect the 
disclosure of core public information under section 552.022. In Industrial 
Foundation of the South v. Texas Industrial Accident Board, we decided the 
scope of information protected by “judicial decision” under the predecessor to 
Government Code section 552.101. 540 S.W.2d at 683. 
This is not an interpretation of “other law” under section 552.022, and, as 
discussed above, the two provisions are not coterminous.
            
In Industrial Foundation, all members of the Court agreed that the 
scope of the “judicial decision” exception did not give the Court a blank check 
to create common law exceptions to the PIA. Id. at 
681–82 (plurality op.). “It was not the intention of the Legislature to 
turn over the administration of the Open Records Act to the judiciary.” 
Id. at 692 (Reavley, J., dissenting, joined by 
Steakley, Pope, and Denton, JJ.); see also Tex. 
Comptroller of Pub. Accounts v. Att’y Gen. of Tex., ___ 
S.W.3d ___ (Tex. 2010) (Wainwright, J., dissenting) (“[C]ourts do not have the discretion to classify information as 
confidential on an ad hoc basis; confidentiality of public information is to be 
determined by the terms of the Act.”). As I discussed in 
Texas Comptroller, the Legislature limited our ability to create judicial 
exceptions to the PIA. Id. at ___. Thus, the 
Legislature’s definition of the “judicial exception” includes only the privacy 
torts recognized at the time of Industrial Foundation. See 540 S.W.2d at 678–81. There was one such tort at that 
time—public disclosure of private facts. I would thus limit the scope of the 
“judicial decision” exception to that tort. My fundamental concern is the 
Court’s willingness to create common law exceptions to the comprehensive 
disclosure scheme of the PIA, weakening the PIA in three consecutive opinions 
interpreting the Act—City of Dallas v. Abbott, 304 S.W.3d 380, 387 
(Tex. 2010) (extending response periods by governmental entities to requests for 
public information when the request was unclear), Texas Comptroller, 
___S.W.3d at ___ (holding dates of birth “confidential” under “judicial 
decision” and excepting them from disclosure under the PIA), and this case, 
DPS v. Cox.
            
Immediately 
after the dispute over the disclosure of travel vouchers arose, the Legislature 
considered making such voucher information confidential.[3] But it did not declare vouchers 
from security details “confidential,” nor did it except these vouchers from the 
definition of “public information” under 552.022(a). Instead, the Legislature 
passed what is currently codified as section 552.151 of the Government Code.[4] That section 
provides:
 
Information in the custody of a governmental body that 
relates to an employee or officer of the governmental body is excepted from the requirements of Section 552.021 if, under 
the specific circumstances pertaining to the employee or officer, disclosure of 
the information would subject the employee or officer to a substantial threat of 
physical harm.
 
 
Tex. Gov’t Code § 552.151 (to be recodified at Tex. Gov’t 
Code § 552.152). The amendment applies only to 
information to be disclosed pursuant to section 552.021, i.e., regular 
“public information.” It is an exception in Subchapter C, which specifically 
does not apply to core public information, like information in the vouchers at 
issue in this case. The Court argues that the Legislature’s “swift passage” of 
section 552.151 of the Government Code “confirms the primacy” of the 
government’s interest in protection against physical harm. ___ 
S.W.3d___. But the Legislature’s intent is best manifested in what 
actually becomes law. Molinet, ___ S.W.3d at 
___ (“The plain meaning of the text is the best expression of legislative intent 
unless a different meaning is apparent . . . .”). The promulgation of 
section 552.151 demonstrates the opposite. Section 552.151 is not an exception 
to the mandated disclosure of core public information. The Court’s opinion 
grafts the Legislature’s test found in section 552.151 onto situations in which 
the Legislature unambiguously did not intend. The Court would rewrite section 
552.151 to hold that such information is “excepted from the requirements of 
sections 552.021 or 552.022” and moves the section out of the PIA such 
that it can be considered “other law.” ___ S.W.3d ____ (emphasis added). The 
Court should not by common law override a specific statutory mandate.
B. 
Confidential
            
Even if “other law” may include judicial decisions and the common law, 
section 552.022 requires that the “other law” declare the information 
“confidential.” “Confidential” may have a fluid meaning, such as “protected,” 
“secured,” or “safeguarded.” Cf. City of Georgetown, 53 
S.W.3d at 334 (“A law does not have to use the word ‘confidential’ to expressly 
impose confidentiality.”). The Legislature has enacted a plethora of laws 
that deem certain information “confidential” for myriad purposes. See Tex. 
Comptroller, ___ S.W.3d ___ (Wainwright, J., dissenting) (noting that “no 
fewer than 100 Texas statutes classify information as confidential for purposes 
of the PIA”); City of Georgetown, 53 S.W.3d at 339–40 (Abbott, J., 
dissenting) (providing four examples of information “expressly made 
confidential” in the Transportation Code, Education Code, and Family Code). 
Likewise, there are a number of tort actions, both statutory and common 
law, that recognize that certain types of information 
are private or confidential.[5] But in every instance, the information 
itself is the issue, and the statute, decision, rule, or crime exists to 
protect the information itself or a person who will be directly harmed by 
the information’s release.
            
Once again, the Court creates a judicial exception to disclosure of 
information in the PIA based on a possible use of the information rather than 
the nature of the information itself. In Texas Comptroller, the Court, 
for the first time, considered derivative harm arising from the release of 
information—whether disclosure of birth dates of public employees, along with 
other information, could be used for identity theft. The Court held that such 
potential tortious use of the public information 
constituted grounds to withhold the information because it would constitute a 
“clearly unwarranted invasion of personal privacy.” Tex. 
Comptroller, ___ S.W.3d at ___. But the courts are not “free to 
balance the public’s interest in disclosure against the harm resulting to an 
individual by reason of such disclosure.” Indus. 
Found., 540 S.W.2d at 681–82 (plurality op.). “This policy 
determination was made by the Legislature when it enacted the statute.” Id. at 82. The Legislature granted the people’s right 
to the information after considering its potential uses and harms. The Court, 
apparently believing the Legislature did not sufficiently execute its task, 
finds a new common law exception to disclosure based on its own views of harm in 
the potential use of, on this occasion, core public information.
            
In Texas Comptroller, as here, the Court did not restrict itself 
to considering whether the actual release of the information (state employees’ 
birth dates) was harmful, but rather whether, in the wrong hands and in 
combination with other information, such as Social Security numbers, state 
employees might be at higher risk for identity theft. Tex. 
Comptroller, ___ S.W.3d ___. The harm was derivative, and the 
analysis allowed for post-hoc, judicially created exceptions to disclosure. For 
the same reasons as in Texas Comptroller, I believe the Court’s analysis 
and application of derivative harm to create an exception to disclosure is 
inappropriate, particularly so because of the core public nature of the 
information at issue, and because the Court’s rule could permit unfettered 
judicial discretion in declaring any information not subject to disclosure. Its 
discovery of this common law right may even inadvertently have the effect of 
creating some common law cause of action for “wrongful disclosure of 
information,” and may have the potential to randomly and unnecessarily subject 
various government agencies and officers to criminal liability for simply 
disclosing what the Legislature determined, and the Court admits, is core public 
information. See Tex. Gov’t Code § 552.352 (defining 
the misdemeanor crime of distribution of information “considered confidential 
under the terms of this chapter”).
C. 
Expressly
            
Even if our common law torts are “other law,” and even if, somehow, the 
threat of the tort of battery declares some unknown information “confidential,” 
the final requirement of section 552.022 is that the “other law” must 
“expressly” make the information “confidential.” The Court does not address how 
it believes that the information at issue here is “expressly” confidential. 
Merriam-Webster’s dictionary defines “express” as “directly, firmly, and 
explicitly stated.” Merriam-Webster Dictionary, 
available at http://www.merriam-webster.com/dictionary/express (last 
visited June 21, 2011). The tort of battery is when a person “(a) . . . acts intending to cause a harmful or 
offensive contact with the person of the other or a third person, or an imminent 
apprehension of such a contact, and (b) a harmful contact with the person of the 
other directly or indirectly results.” Restatement (Second) of Torts § 13 
(1965); see also Bailey v. C.S., 12 S.W.3d 159, 162 (Tex. 
App.—Dallas 2000, no pet.) (“A person commits a battery if he intentionally or 
knowingly causes physical contact with another when he knows or should 
reasonably believe the other person will regard the contact as offensive or 
provocative.”). Nowhere in the tort’s elements, or in any of our cases, is it 
“directly, firmly, and explicitly stated” that battery protects information from 
disclosure. The tort concerns harmful or offensive intentional contact. The 
Court ignores this critical requirement of the statute limiting a court’s 
ability to protect information from disclosure.
            
Simply put, common law battery is not “other law” under which the 
information at issue here is “expressly confidential.” The Court oversteps 
legislated limits recognized in Industrial Foundation to interpret 
exceptions to disclosure under the PIA. For this reason, I do not join in the 
Court’s opinion.
III. Remand Is 
Appropriate
            
Although I cannot join the Court’s opinion, I join its judgment that 
remand is appropriate. I believe DPS’s and the trial court’s improper reliance 
on the “special circumstances” exception, and the possibility of harm to public 
officials, warrants a remand in the interests of justice. I also believe that 
DPS should have the opportunity to argue that a specific exception to disclosure 
made by the Homeland Security Act should apply.
            
The Court 
relies on and builds upon the Attorney General’s “special circumstances” test, 
which the Attorney General has applied numerous times in various letter rulings, 
in support of its holding today. However, this test, and its 
rulings, do not apply to the information at issue here nor to the legal 
theory upon which the Court relies in withholding the information.
            
The genesis of the test is a one-page letter ruling from 1974, that was later expanded in 1977. It was not a 
freestanding test to withhold information, but rather was used in determining 
whether information could be withheld as a “clearly unwarranted invasion of 
personal privacy,” a separate, statutory exception to disclosure of non-core 
public information in the Act. Tex. Att’y Gen. ORD-54 (1974); Tex. Att’y. Gen. ORD-169 (1977); see also Tex. Gov’t Code § 552.102 (providing an exception for regular 
“public” information for information in a personnel file, “the disclosure of 
which would constitute a clearly unwarranted invasion of personal 
privacy”). In other words, the attorney general examined 
“special circumstances,” such as an employee’s specific history of being 
threatened, harassed, or stalked, to see if information in a state employee’s 
personnel file should not be disclosed under what is now section 552.102 of the 
PIA. Rather than protecting more information from disclosure, the “special 
circumstances” test, as initially articulated by the attorney general, actually 
required more information to be disclosed, because only if the “special 
circumstances” existed could an employee’s personnel information (including his 
or her home address, phone number, and other personal information) be withheld. 
Tex. Att’y Gen. ORD-54 (1974); Tex. 
Att’y Gen. ORD-169 (1977).
            
In later attorney general opinions, though, the “special circumstances” 
test was not discussed in conjunction with section 552.102’s “clearly 
unwarranted invasion of personal privacy” in employees’ personnel files, but 
rather as a privacy exception or “other judicial decision” under section 
552.101. See, e.g., Tex. Att’y Gen. 
OR2004-10845. No party extensively discussed the evolution of this test in the 
attorney general’s office from 1977 until today. However, it appears that the 
attorney general’s basis for applying the “special circumstances” test to 
information not subject to disclosure was based on the application of the tort 
of public disclosure of private facts (discussed in Industrial Foundation 
and analyzed under the employment file exception, predecessor to section 
552.102) as another “judicial decision” excluding information pursuant to 
section 552.101.
            
It also appears that the Attorney General has determined that section 
552.101 is “other law” for the purpose of deciding whether core public 
information can be withheld. I agree that the tort of public disclosure of 
private facts may be a “judicial decision,” as it was extant at the time the PIA 
was promulgated, that could be the basis of an exclusion from disclosure under 
section 552.101 and may also be “other law” by which core public information is 
“expressly confidential” under section 552.022. However, section 552.101, in and 
of itself, cannot be “other law” to withhold core 
public information. To enact such a rule would thwart the Legislature’s 
expressed intent that core public information is not subject to the Subchapter C 
exceptions, including section 552.101. This is further evidenced by the fact 
that the Legislature’s new “special circumstances” exception, which appears to 
be similar to the Attorney General’s so-called common law privacy “special 
circumstances” exception, is in Subchapter C, thus currently applying to “public 
information” but not core public information that must be disclosed pursuant to 
section 552.022. Therefore, the Attorney General’s “special circumstances” 
exception should not apply to the information here.
            
The Attorney General’s “special circumstances” test cannot apply in this 
situation. However, because the use of the test as an independent basis for 
withholding information was reasonably well established in a number of attorney 
general letter rulings for a number of years, because DPS and the trial court 
erroneously relied upon the test, and because of the serious personal safety 
concerns at issue in this case, I would remand in the interest of justice to 
allow DPS to argue any and all exceptions that are based on “other law,” such as 
one based on Government Code section 418.176, the exception from the Homeland 
Security Act. See Tex. R. App. P. 
60.3; Low v. Henry, 221 S.W.3d 609, 621 (Tex. 2007) (remanding “to 
allow the parties to present evidence responsive to [the Court’s] new 
guidelines”).
            
On remand, the trial court should consider whether specific information 
in the vouchers raises serious security concerns and should be redacted. For 
example, in the sample submitted in camera to the Court, one cannot only 
identify at which specific hotels the Governor’s security detail stayed and, 
inferentially, whether they stayed in the same hotel as the Governor, but also 
when the members of the detail arrived and departed from the foreign country. 
Other information in the vouchers, such as total amounts spent for lodging or 
costs of meals, may not present the same security concerns. The trial court 
should carefully consider the varying levels of concern for the different types 
of information in the vouchers.
IV. Conclusion
            
There is legitimate concern about fashioning a rule that could allow 
those who want to do harm to government officials to gain information to help 
them do so through the government’s own records. The rule the Court announces 
today—that it can fashion common law exceptions to disclosure of core public 
information—is based on a genuine concern to protect our public officials from 
physical harm and acts of terrorism, but it thwarts the Legislature’s clear 
statement that it, not the courts, grants exceptions to the public’s access to 
public information. There are many statutes and rules that make information 
“expressly confidential,” but the judge-made tort of battery is not one, and we 
should guard against any court creating reasons to keep government information 
from its citizens. That policy-laden task, as emphasized in Industrial 
Foundation, belongs to the Legislature. Because the Court’s rule opens the 
door to new judicially created exceptions to disclosure of core public 
information and weakens what was one of the strongest, most robust freedom of 
information statutes in the nation,[6] I respectfully cannot join the Court’s 
opinion. But because I believe remand in the interest of justice is appropriate, 
I join the Court’s judgment.
 
                                                                                    
 ______________________________
                                                                                    
 Dale Wainwright
                                                                                    
 Justice
 
OPINION DELIVERED: July 1, 2011






[1] 
Recently, the Texas Legislature amended section 552.022’s “expressly 
confidential under other law” provision, and also added specific exceptions in 
the PIA for certain confidential information. See generally Act of May 
20, 2011, 82nd Leg., R.S. (to be codified at Tex. Gov’t Code chs. 51, 
552). After the effective date, core public information may be withheld 
from disclosure if it is “made confidential under this chapter or other law.” 
Id. § 2 (to be codified at Tex. Gov’t Code § 552.022). This amendment 
does not apply to the case at bar, because the statute’s effective date is 
September 1, 2011. Id. § 41.

[2] This is 
essentially the limited exception under the federal Freedom of Information Act. 
See 5 U.S.C. § 552(b)(3) (excluding from FOIA’s 
reach “matters that are specifically exempted from disclosure by 
statute . . . if that statute . . . (i) requires that the matters be withheld from the public in 
such a manner as to leave no discretion on the issue; or (ii) establishes 
particular criteria for withholding or refers to particular types of matters to 
be withheld; and specifically references § 552(b), if passed after 
2009”).

[3] 
Parallel bills in the Texas House and Senate during the current 
legislative session attempted to specifically make “a voucher submitted or to be 
submitted under [Chapter 660 of the Government Code] confidential and may not be 
disclosed under the PIA” if the voucher was for expenses incurred in protecting 
an elected official or the official’s family. H.B. 3131, 82nd 
Leg. R.S., § 1 (introduced March 10, 2011); S.B. 1923, 
82nd Leg., R.S., § 1 (introduced April 29, 2011). Neither bill came to a 
vote before each bill’s respective chamber during the regular session. During 
the special session in June 2011, Senate Bill 1 was amended to make vouchers or 
other reimbursement forms confidential for a period of eighteen months following 
the date of travel “if the reimbursement or travel expense incurred by a peace 
officer while assigned to provide protection for an elected official of this 
state or a member of the elected official’s family.” S.B. 1, 
82nd Leg., 1st C.S., § 79A.01 (introduced May 31, 2011). Following the eighteen-month period, the vouchers “become subject to 
disclosure under Chapter 552 and are not excepted from public disclosure or 
confidential under that chapter or other law,” with seven exceptions, including 
the personal safety exception. Id. During the eighteen-month 
period, agencies are required to submit expense summaries providing specified, 
detailed information. Id. The Legislature has provided that this Court 
will have “original and exclusive mandamus jurisdiction” over the construction, 
applicability, or constitutionality of the amendment, 
and the amendment applies only to vouchers created on or after September 1, 
2011. Id.; see also id. § 80. The Governor has not yet taken 
action on the bill.
                
 Because the vouchers at 
issue in this case are not covered by the new section, its interpretation is not 
before this Court.

[4] The 
original enacting legislation added the exception as section 552.151. See 
Act of May 31, 2009, 81st Leg., R.S., ch. 283, § 4, 
2009 Tex. Gen. Laws 742, 743 (codified at Tex. Gov’t Code § 552.151). This session, the 
Legislature redesignated the section as section 
552.152, effective September 1, 2011. See Act of May 5, 
2011, 82nd Leg., R.S., S.B. 1303, § 27.001(20). For the sake of clarity, 
this opinion will refer to the provision as presently in force, section 
552.151.

[5] 
Examples include trade secrets, privilege, public disclosure of private 
facts, and gag orders during trial. See In re Bass, 113 S.W.3d 735, 739 
(Tex. 2003) (defining trade secrets); Restatement (Third) of Unfair Competition 
§§ 39, 40, 41 (similarly defining trade secrets and remedies available 
for protection of trade secrets); Tex. 
R. Civ. P. 193.3 (setting standards for asserting privileges in 
discovery); In re E.I. DuPont de Nemours & Co., 136 S.W.3d 218, 
222–23 (Tex. 2004) (per curiam) (providing for 
mandamus relief for erroneous rulings on privileged documents); Indus. Found. 
of the S. v. Tex. Ind. Accident Bd., 540 S.W.2d 
668, 682–83 (Tex. 1976) (plurality op.) (discussing the 
tort of public disclosure of private facts); Davenport v. Garcia, 834 
S.W.2d 4, 10 (Tex. 1992) (discussing a court’s authority to issue gag 
orders).

[6] See 
City of Dallas, 304 S.W.3d at 395 n.5 (Wainwright, J., dissenting) (citing 
151 Cong. Rec. S1525-26 (Feb. 16, 2005) (statement of Senator John Cornyn)).