ACCEPTED
03-14-00594-CV
4070256
THIRD COURT OF APPEALS
AUSTIN, TEXAS
2/9/2015 11:27:38 AM
JEFFREY D. KYLE
CLERK

**03-14-00594-CV**

# In the Court of Appeals for the Third District of Texas
# Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
2/9/2015 11:27:38 AM
JEFFREY D. KYLE
Clerk

_____

**GREG ABBOTT, ATTORNEY GENERAL OF TEXAS,**

*Appellant*

V.

**TEXAS DEPARTMENT OF STATE HEALTH SERVICES,**

*Appellee*

_____

On Appeal from the 353rd Judicial District Court of Travis County, Texas,
Cause No. D-1-GN-12-002322

_____

## APPELLEE'S BRIEF

_____

KEN PAXTON
Attorney General

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for
 Civil Litigation

ROBERT O'KEEFE
Division Chief,
Financial Litigation, Tax, and
Charitable Trusts Division

ANN HARTLEY
Attorney in Charge
State Bar No. 09157700

LAURA A. BARBOUR
Assistant Attorney General
State Bar No. 24069336

Office of the Attorney General
Financial Litigation, Tax, and
 Charitable Trusts Division
PO Box 12548, MC 017-6
Austin, Texas 78711-2548
Tel:  (512) 936-1313
Fax: (512) 477-2348
ann.hartley@texasattorneygeneral.gov
COUNSEL FOR APPELLEE

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...........................................................................iii

STATEMENT OF THE CASE ....................................................................... v

ISSUE PRESENTED FOR REVIEW.............................................................. v

INTRODUCTION ........................................................................................... 1

STATEMENT OF FACTS ............................................................................... 2

    Procedural Background .............................................................................. 2

    The Statute at Issue.................................................................................. 4

    The Dispute ............................................................................................... 4

SUMMARY OF THE ARGUMENT ................................................................. 5

ARGUMENT .................................................................................................. 6

    STANDARD OF REVIEW ........................................................................... 6

  I.   The Plain Meaning of Section 531.1021(g) Supports DSHS's
       Interpretation ..................................................................................... 7

  II.  DSHS's Interpretation Comports With OIG's Purpose and
       Function.............................................................................................. 9

  III. DSHS's Interpretation Comports with the PIA. ................................. 14

  IV. The Legislature is Presumed Aware of Previous Letter Rulings ....... 15

PRAYER...................................................................................................... 26

CERTIFICATE OF COMPLIANCE .............................................................. 27

CERTIFICATE OF SERVICE:...................................................................... 28

APPENDIX .................................................................................................. 29

# TABLE OF AUTHORITIES

**Cases**

*City of Dallas v. Abbott*
    304 S.W.3d 380 (Tex. 2010) ........................................................ 16, 17

*City of Fort Worth v. Abbott*
    258 S.W.3d 320 (Tex. App.–Austin 2008, no pet.) ................................ 25

*City of Garland v. Dallas Morning News*
    22 S.W.3d 351 (Tex. 2000) ............................................................ 7

*FKM P'ship Ltd. v. Bd. of Regents of Univ. of Houston*
    255 S.W.3d 619 (Tex. 2009) ............................................................ 8

*Houston Chronicle Publishing Co. V. City of Houston*
    531 S.W. 2d 177, 185 (Tex. Civ. App.–Houston [14th Dist.]
    1975, writ ref'd per curiam) ........................................................ 25

*Houston Chronicle Publishing Co. v. City of Houston*
    536 S.W.2d 559 (Tex. 1976) ......................................................... 25

*McBride v. Clayton*
    166 S.W.2d 125 (Tex. 1942) ......................................................... 17

*Tex. State Bd. of Chiropractic Exam'rs v. Abbott*
    391 S.W.3d 343 (Tex. App.–Austin 2013, no pet.) ................................ 7

*Tex. Worker's Comp. Comm'n v. Patient Advocates*
    136 S.W.3d 643 (Tex. 2004) .......................................................... 7

*Traveler's Insurance Co. v Joachim*
    315 S.W.3d 860 (Tex. 2010) .......................................................... 7

**Statutes**

Tex. Gov't Code § 311.021 ................................................................. 22

Tex. Gov't Code ch. 531, subch. C ...................................................... 10

Tex. Gov't Code § 531.0055 (e). ......................................................... 11

Tex. Gov't Code § 531.008(c)(2)................................................................10

Tex. Gov't Code § 531.102(d)..................................................................14

Tex. Gov't Code § 531.102(k) .................................................................14

Tex. Gov't Code § 531.1021 ...........................................................*passim*

Tex. Gov't Code § 531.1021(g) .......................................................*passim*

Tex. Gov't Code ch 552 .............................................................. 4, 5, 6, 9

Tex. Gov't Code § 552.101 ........................................................ v, 21, 26

Tex. Gov't Code § 552.222(b) ........................................................ 16, 17

Tex. Gov't Code § 552.301(a) ...................................................................21

Tex. Gov't Code § 552.342 ........................................................................2

## Other Authorities

Acts 1995, 74th Leg., ch. 76, Sec. 8.002(a), S.B. 959.............................10

Acts 2003, 78th Leg., ch. 198, § 2.20 (H.B. 2292) ..................................18

Acts 2005, 79th Leg., ch. 249, § 18(b) (S.B. 1188) .................................19

Acts 2005, 79th Leg., ch. 349, § 18(b) ....................................................25

Acts 2011, 82nd Leg., R.S., ch. 620 (H.B. 1332). ...................................21

Acts 2011, 82nd Leg., R.S., ch. 620 (S.B. 688), Sec. 4.....................*passim*

Acts 2011, 82nd Leg., R.S., ch. 620, § 4.................................................25

## Rules

1 Tex. Admin. Code § 371.1607 ...........................................................12

## STATEMENT OF THE CASE

Appellee Texas Department of State Health Services sued Appellant Greg Abbott, Attorney General of Texas, seeking a declaration that:

(1) all information and materials compiled by the Texas Health and Human Services Commission Office of Inspector General in connection with any audit or investigation are confidential under Texas Government Code section 531.1021(g), without regard to whether the audit or investigation is done in connection with Medicaid fraud; and

(2) the information at issue in Letter Ruling OR2012-10072 was confidential by law and not subject to disclosure under the Texas Public Information Act. (CR 3).

The trial court granted Appellee's Motion for Summary Judgment and denied Appellant's Motion for Summary Judgment. (CR 128–29).

The issue on appeal is whether the trial court properly granted Appellee's Motion for Summary Judgment.

## ISSUE PRESENTED FOR REVIEW

Did the trial court correctly construe the relevant statutes in deciding that the information at issue–information relating to an investigation of alleged misconduct of a named Texas Department of State Health Services ("DSHS") employee–is excepted from disclosure under Texas Government Code section 552.101 in conjunction with Texas Government Code section 531.1021, and that DSHS must not disclose the information at issue to the requestors?

# INTRODUCTION

Texas Government Code section 531.1021(g) ("Section 531.1021(g)") expressly makes confidential "[a]ll information and materials subpoenaed or compiled" by the Texas Health and Human Services Commission ("HHSC") Office of Inspector General ("OIG") "in connection with an audit or investigation . . . ." The legislature placed no restrictions on the subject matter of OIG investigations or audits deemed confidential under Section 531.1021(g). The attorney general, however, seeks to limit the applicability of Section 531.1021(g) to cover only audits and investigations of alleged "fraud, waste, or abuse in the provision and delivery of health and human services." (Apt. Br. 4).

The trial court agreed with Appellee Texas Department of State Health Services ("DSHS") that Section 531.1021(g) mandates that all information and materials compiled by the OIG in connection with any audit or investigation are confidential. The trial court's judgment should be affirmed.

## STATEMENT OF FACTS

## Procedural Background

DSHS filed suit under Texas Government Code section 552.342 to challenge Letter Ruling OR2012-10072 ("Letter Ruling"). (CR 3–5). DSHS received two requests for information relating to the OIG investigation of a DSHS employee. (CR 16). Iris, one DSHS employee, filed a complaint against Angel, another DSHS employee. (CR 16). The OIG investigated the complaint and found it was not substantiated. (CR 16). Both Iris and Angel filed requests with DSHS for information and materials related to the investigation. (CR 16). DSHS sought a letter ruling, arguing to the attorney general's Open Records Division ("ORD") that the information was confidential under Section 531.1021(g) because it was compiled in an investigation by the OIG. (CR 16).

ORD's Letter Ruling concludes that Section 531.1021(g), as amended in 2011, "applies only to audits and investigations of Medicaid and other health and human services fraud and abuse." The Letter Ruling reasons that because the information was not related to Medicaid or other health and human services fraud, abuse, or overcharges, DSHS could not withhold any of the information at issue on the basis of Section 531.1021(g). (CR 17).

There is no dispute about whether the information at issue was compiled for an audit or investigation of Medicaid and other health and human services fraud and abuse. It was not. The only part of the Letter Ruling DSHS challenged in the trial court was the statutory interpretation of Section 531.1021(g) in the Letter Ruling. (CR 17).

The parties filed cross-motions for summary judgment, stipulating that:

1. the information at issue <u>was not</u> subpoenaed or compiled by the OIG in connection with a Medicaid fraud investigation; and

2. the information at issue <u>was</u> subpoenaed or compiled by the OIG in connection with an audit or investigation.

(CR 15). After a hearing on the parties' cross-motions, the trial court granted DSHS's motion and denied Abbott's motion. (CR 128-29). Abbott appealed.

**The Statute at Issue**

The current version of the statute at issue in this case is here, with the pertinent part underlined:

TEX. GOV'T CODE § 531.1021(Subpoenas):

> (g) <u>All information and materials subpoenaed or compiled by the office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552</u>, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to the state auditor's office, law enforcement agencies, and other entities as permitted by law.

**The Dispute**

The parties agree that the information at issue was compiled by the OIG for an investigation not related to Medicaid fraud. (CR 15). The issue is whether Section 531.1021(g) protects as confidential materials compiled by the OIG in connection with <u>any</u> audit or investigation, or only materials compiled by the OIG in connection with a Medicaid fraud or other health and human services fraud and abuse investigation.

## SUMMARY OF THE ARGUMENT

This is a statutory construction case. Section 531.1021(g) was first enacted in 2003 and amended in 2005 and 2011. Until 2011 the statute protected from disclosure "**all information and materials subpoenaed or compiled by the office in connection with an audit or investigation**." The 2011 amendment[1] created a distinction between investigations done by the inspector general and those done by the attorney general. It provides different criteria for protecting these investigations from disclosure depending on who did them. The amended statue says:

> All information and materials subpoenaed or compiled by the office in connection with an audit or investigation <u>or by the office of the attorney general in connection with a Medicaid fraud investigation</u> are confidential and not subject to disclosure under Chapter 552. . . .

TEX. GOV'T CODE § 531.1021(g) (emphasis added).

In 2011 Abbott reversed his–and OIG's–long-standing interpretation of the statute; ("[F]ollowing the [2011] legislative action the Attorney General concluded his office's prior application of the statute had been in error." (Apt. Br. 19)). Abbott determined that the law does not protect OIG investigations from disclosure unless they are related to "Medicaid and other health and human services fraud and abuse." (Apt. Br. 18). This

---

[1] Acts 2011, 82nd Leg., R.S., ch. 620 (S.B. 688), Sec. 4.

dramatic shift is inconsistent with the Inspector General's ability to carry out responsibilities imposed by the legislature and by the HHSC Executive Commissioner, and it mis-reads the statute. DSHS relies on the actual words in Section 531.1021(g). Abbott discusses a made-up version of the statute and relies on "context," criticizing DSHS for reading the pertinent part of the law "in complete isolation." (Apt. Br. 10).

DSHS does not seek any special protection for investigations into employee misconduct. Aside from policy arguments for or against protecting OIG investigations into employee misconduct, the legislature has made no such distinction and has said that regardless of the topic, **all information and materials subpoenaed or compiled by the office in connection with an audit or investigation** are confidential and not subject to disclosure under Chapter 552.

## ARGUMENT

## STANDARD OF REVIEW

"When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review the summary judgment evidence presented by both sides, determine all questions presented, and render the judgment the trial court should have

rendered." *Tex. State Bd. of Chiropractic Exam'rs v. Abbott*, 391 S.W.3d 343, 347 (Tex. App.–Austin 2013, no pet.); *see also Tex. Worker's Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 648 (Tex. 2004). An appeal of a trial court's summary judgment is reviewed de novo. *Traveler's Insurance Co. v Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). Matters of statutory construction, including interpretation of the PIA, are questions of law that are reviewed de novo. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 357 (Tex. 2000).

## I. The Plain Meaning of Section 531.1021(g) Supports DSHS's Interpretation

(Responding to Apt. Br. I. A.)

A plain reading of Section 531.1021(g) shows that the phrase "in connection with an audit or investigation" defines the information made confidential when compiled or subpoenaed by the OIG. For information to be deemed confidential under Section 531.1021(g), it must be (1) compiled or subpoenaed by the OIG (2) in connection with an audit or investigation. Section 531.1021(g) limits only the type of inquiry afforded confidentiality: OIG audits or investigations. Section 531.1021(g) does not limit the subject matter of OIG audits or investigations afforded confidentiality. It does, however, limit the subject matter of OAG investigations afforded confidentiality to Medicaid fraud investigations.

-7-

When construing statutes, courts must first look at the plain and common meaning of the words chosen. *FKM P'ship Ltd. v. Bd. of Regents of Univ. of Houston*, 255 S.W.3d 619, 633 (Tex. 2009). There is one sentence at issue in this case. It addresses two separate state offices, with separate and distinct conditions for confidentiality applicable to each. A plain reading of the current statutory sentence, presented to show its parallel structure, is:

> All information and materials subpoenaed or compiled
>
> > **by OIG**
> >
> > > in connection with an audit or investigation
> >
> > or
> >
> > **by the office of the attorney general**
> >
> > > In connection with a Medicaid fraud investigation
>
> are confidential.

Abbott's interpretation of Section 531.1021(g) adds restrictions not present in the statute. Indeed, Abbott's interpretation depends on the addition of the following phrase, bracketed and in bold:

> (g) All information and materials subpoenaed or compiled by the office in connection with an audit or investigation **[of Medicaid fraud or other fraud, waste, and abuse in the provision and delivery of all health and human services in the state]** or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552
>
> . . . .

By implying the additional phrase, Abbott attempts to limit the scope of Section 531.1021(g) beyond the restrictions imposed by the Legislature. Indeed, Abbott implies that without the additional restriction, OIG enjoys limitless confidentiality. This is not so. Only information compiled *in connection with an audit or investigation* is deemed confidential. And, as discussed below, DSHS's interpretation best accounts for OIG's function and responsibilities.

## II. DSHS's Interpretation Comports with OIG's Purpose and Function

(Responding to Apt. Br. I. B and C.)

DSHS does not ask the Court to read Section 531.1021(g) in isolation. In fact, DSHS asks this Court to read Section 531.1021(g) in the context of OIG's function, which includes investigations of employee misconduct. Moreover, the only government entity relevant to this discussion is OIG. Comparison of OIG's responsibilities and privileges to those of other governmental entities is irrelevant. (Apt. Br. 13-15). The

legislature has directed in Section 531.1021(g) that all information compiled by the OIG in connection with an audit or investigation is confidential. Whether any other governmental entity should be governed by a similar provision is entirely within the purview of the legislature.

As Abbott points out, Subchapter C in Chapter 531 of the Government Code describes duties of the OIG, *including* Medicaid fraud investigations, but there is nothing in Subchapter C–including the caption– that limits the OIG to Medicaid fraud investigations or to investigations under Subchapter C. Although Medicaid fraud is a significant concern for the OIG, since 1995 the OIG has been charged with investigating more than just Medicaid fraud:

> The executive commissioner shall establish within the commission the office of inspector general to perform fraud and abuse investigation and enforcement functions as provided by Subchapter C *and other law.*

TEX. GOV'T CODE § 531.008(c)(2).[2]  (Emphasis added.)

The HHSC executive commissioner has discretion under Chapter 531 of the Government Code to organize the commission and to charge the OIG with investigating not only Medicaid fraud, but also internal matters:

---

[2]  Added by Acts 1995, 74th Leg., ch. 76, Sec. 8.002(a), S.B. 959.

§ 531.0055.  Executive Commissioner: General Responsibility for Health and Human Services Agencies

(e)     Notwithstanding any other law, the executive commissioner shall adopt rules and policies for the operation of and provision of health and human services by the health and human services agencies.

TEX. GOV'T CODE § 531.0055 (e).

§ 531.008.  Divisions of Commission

(a)     Subject to Subsection (c), the executive commissioner may establish divisions within the commission as necessary for effective administration and for the discharge of the commission's functions.

(b)     Subject to Subsection (c), the executive commissioner may allocate and reallocate functions among the commission's divisions.

(c)     The executive commissioner shall establish the following divisions and offices within the commission:

(2)     the office of inspector general to perform fraud and abuse investigation and enforcement functions as provided by Subchapter C and other law[.]

TEX. GOV'T CODE § 531.008.

For many years, the OIG has been investigating employee misconduct at the various health and human service agencies. People have filed requests for information about those investigations, and until

-11-

Abbott's new interpretation, ORD (including Abbott's ORD) consistently determined that information was confidential under Section 531.1021(g) *solely* because it was compiled by the OIG for an audit or investigation, without regard to the subject matter of that audit or investigation.

The OIG has discretion to decline investigation of any matter that does not constitute fraud, waste, or abuse, as defined by 1 TEX. ADMIN. CODE § 371.1607. (*See* CR 52). In such cases, agency management may investigate. Where an investigation is conducted by management and *not by the OIG*, the confidentiality of Section 531.1021(g) does not apply. The key is whether the OIG determines that the matter warrants OIG attention. Neither the existence nor the exercise of OIG discretion to make this determination has been challenged here, nor has ORD suggested that the OIG is not authorized to do investigations that do not involve Medicaid fraud. The legislature has left with the HHSC executive commissioner and the OIG the discretion to determine which matters will be investigated by the OIG; when the OIG decides to investigate *any* matter, the legislature has chosen since 2003 to protect the materials compiled by the OIG in connection with that investigation. *(See* CR 54-56).

Abbott opines that DSHS's interpretation could make confidential materials compiled in connection with a "simple audit and accounting of

office supplies." (Apt. Br. 12). An accounting of office supplies, however, is not covered by Section 531.1021(g) unless it is an "audit or investigation." Materials compiled in connection with an *audit* of office supplies might be deemed confidential even under Abbott's interpretation. Abbott seeks to restrict the investigations afforded confidentiality to those involving fraud, waste, and abuse in the provision and delivery of all health and human services in the state. (Apt. Br. 5-6). Examples of waste noted in HHS Circular C-027 include the purchase of unneeded supplies or purchase of goods at inflated prices. (CR 46) The purchase or use of office supplies could constitute waste, and an OIG audit could be covered by Section 531.1021(g).

The information at issue in this case is material compiled by the OIG in connection with an OIG investigation of a complaint by one employee against another. HHSC has assigned responsibility for investigating those allegations to OIG, as set forth in Circular C-027 (*See* CR 46-53). Pursuant to Section 531.1021(g), the information compiled by OIG in connection with that investigation is confidential.

## III. DSHS's Interpretation Comports with the PIA.

(Responding to Apt. Br. D.)

DSHS asks this court to strictly construe Section 531.1021(g) to comply with both the letter and the spirit of the PIA. DSHS's interpretation would not lead to the "taxpaying public being denied access to any information derived from investigations into the alleged misconduct of government employees," as Abbott suggests. (Apt. Br. 16). Any final report on an OIG audit or investigation is public, pursuant to Section 531.102(k). That information or materials compiled during the audit remain confidential, however, comports with the investigative goals of the OIG.

Keeping the information OIG acquires in connection with an audit or investigation confidential serves the purpose of encouraging people to report matters to OIG. The OIG is "entitled to access *any* information maintained by a health and human services agency, including internal records, *relevant to the functions of the office.*" Tex. Gov't Code § 531.102(d) (emphasis added). If the OIG's investigative files were to be suddenly declared open, then the OIG's ability to obtain sensitive information and carry out its investigative responsibilities would be severely impaired. The OIG would face challenges *during* investigations, sought as a condition to OIG access to information, about whether the investigation

-14-

should, or would later, be deemed confidential. The OIG may not initially know the scope of subject matters relevant to an investigation; the burden of making such a determination before or during an investigation was not imposed on OIG by the legislature and should not be imposed by the Court. (*See* CR 44-45). Failure to protect the confidentiality of information compiled in connection with an OIG audit or investigation could have a chilling effect on persons with information to report in the future. To protect those served by OIG, it is vital that persons and companies feel secure in reporting information to the OIG.

DSHS seeks to follow the law as the legislature enacted it. The legislature chose to limit confidentiality by the <u>type</u> of OIG inquiry, not the <u>subject matter</u> of that inquiry. Any changes to this policy should be made by the legislature, not the Court.

## IV. The Legislature is Presumed Aware of Previous Letter Rulings

(Responding to Apt. Br. I. E.)

Abbott's contention that DSHS has "repeatedly misconstrued" the Attorney General's interpretation of Section 531.1021(g) misses the point. DSHS construes the provision as written. Abbott construes the provision with additional restrictions not present in Section 531.1021(g).

Abbott now contends that ORD's prior interpretations of Section 531.1021(g) were incorrect, but in doing so, Abbott ignores one crucial point: the legislature is presumed to be aware of ORD's prior rulings, and the legislature did not take any action to amend Section 531.1021(g) to address Abbott's prior interpretation. *See City of Dallas v. Abbott*, 304 S.W.3d 380, 386-87 (Tex. 2010) ("*City of Dallas*").

The Supreme Court of Texas recognized in *City of Dallas* that the "regulatory background created by the attorney general's rulings may properly be considered when interpreting the PIA. 304 S.W.3d at 386-87. In *City of Dallas*, the Supreme Court had to construe Section 552.222(b) of the PIA, which set a ten-day deadline for an agency to seek a ruling from the attorney general if the agency wished to withhold responsive information from a PIA request. The issue was whether the ten-day clock started on the date of the original request or when the request was clarified by the requestor. *Id.* At 386-87 ("We must decide what effect a request for clarification or narrowing has on the ten-day deadline. Section 552.222(b) is silent on this issue.")

Pertinent to our case, the *City of Dallas* opinion presumed that the legislature was aware of a decade-old decision of the attorney general holding that the ten-day period was triggered not by the original request but

-16-

by a clarification of the request, "even though the Act contained no provision allowing a governmental entity to attempt to clarify or narrow a request." The Court noted that:

> The regulatory background against which Section 552.222(b) was enacted reinforces our construction of the statute. More than a decade before the legislature enacted the clarification statute, the Attorney General had issued Open Records Decision 333, a decision that has never been withdrawn or overruled. . . . Presumptively, the legislature was aware of this opinion when it enacted Section 552.222(b). . . . While the opinion was not based on any explicit clarification provision, *it did provide the legislature with the view of the officer in charge of enforcing the Act.* . . . It is not unreasonable to assume that the legislature anticipated that Section 552.222(b) would have the same effect on the ten-day deadline.

*Id.* at 386-87 (emphasis added).

The Texas Supreme Court explained in *McBride v. Clayton*, 166 S.W.2d 125, 128 (Tex. 1942) that "statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it." In our case, it is not unreasonable to assume that the 82nd Legislature anticipated that Section 531.1021(g) as amended would continue to protect OIG investigative materials as it had for years before, since no amendment was made to the language defining the scope of confidentiality of OIG investigative materials. Had the 82nd Legislature disagreed with ORD's prior interpretation or wanted to curtail the

-17-

confidentiality historically afforded by the attorney general's applied interpretation of Section 531.1021(g), it could have done so in 2011 with Senate Bill 688. It did not.

Section 531.1021(g) was first enacted in 2003[3] and amended several times. The amendment at issue was enacted in 2011.[4] The original, 2003 version of Section 531.1021(g), according to the Senate Research Center's Bill Analysis of the new law, with pertinent part in bold:

> (g) Provides that all information and materials subpoenaed or compiled by the office **in connection with an investigation** are confidential and not subject to disclosure under chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or its employees or agents involved in the investigation conducted by the office, except that this information may be disclosed to the office of the attorney general and law enforcement agencies.

Neither the 2003 version of the law nor the Bill Analysis suggested that confidentiality of OIG investigation materials was limited by subject matter. Confidentiality was extended to *all* materials compiled by the OIG in connection with *any* investigation it undertook.

---

[3] Acts 2003, 78th Leg., ch. 198, § 2.20 (H.B. 2292).

[4] Acts 2011, 82nd Leg., ch. 620, § 4 (S.B. 688).

Section 531.1021(g) was amended in 2005[5] to expand the confidentiality protection to include material compiled by the OIG in connection with an audit.  The 2011 amendment of Section 531.1021(g) again expanded the confidentiality protection, this time to include material gathered by the *attorney general* in a *Medicaid fraud investigation*, just like material gathered by the OIG in a Medicaid fraud investigation had been since 2003.  The Enrolled Bill Summary for S.B. 688[6] describes it this way:

> The bill provides the attorney general concurrent jurisdiction with the appropriate local prosecutor to prosecute an exploitation offense or Medicaid fraud offense that involves the Medicaid program and provides for the confidentiality of all information and materials subpoenaed or compiled by the office of the attorney general in connection with a Medicaid fraud investigation.

The House Research Organization Bill Analysis of the 2011 amendment to Section 531.1021(g)[7] similarly noted that the material *collected by the attorney general* during a Medicaid fraud investigation would be confidential:

---

[5] Acts 2005, 79th Leg., ch. 249, § 18(b) (S.B. 1188).

[6] http://www.legis.state.tx.us/BillLookup/BillSummary.aspx?LegSess=82R&Bill=SB688

[7] House Research Organization Bill Analysis of S.B. 688, p. 3 (May 17, 2011).

> All information and materials subpoenaed or compiled by the HHSC during a Medicaid fraud investigation would be confidential and not subject to disclosure under the Public Information Act or by discovery or subpoena. The same information and materials collected by the attorney general during a Medicaid fraud investigation would be confidential and not subject to disclosure.

DSHS's interpretation of the statute, that the 2011 amendment of Section 531.1021(g) had no effect on the confidentiality of the OIG's investigations, has support not only in the statute itself, but also in the long-standing interpretation by the attorney general that all OIG investigations were confidential. The attorney general in 2004 issued a "Previous Determination" (OR2004-8876), holding that information compiled in connection with an OIG investigation of Child Protective Services Programs was confidential under Section 531.1021(g).

The significance of the attorney general's Previous Determination in this case is explained in the 2004 letter ruling:

Next, you ask this office to issue a previous determination authorizing the commission to withhold all information and materials compiled by the OIG in connection with its investigations under section 552.101 of the Government Code in conjunction with section 531.1021(g) of the Government Code. After due consideration, we have decided to grant your request. Therefore, this letter ruling shall serve as a previous determination under section 552.301(a) that the commission must withhold all information and materials compiled by the OIG in connection with OIG investigations under section 552.101 of the Government Code in conjunction with section 531.1021(g) of the Government Code

. . . .

OR2004-8876 (CR 62). By its terms, the Previous Determination does not limit OIG investigations' confidentiality by subject matter–it deems confidential "all information and materials compiled by the OIG <u>in connection with its investigations</u> . . . ."

The legislature thus had an opportunity in 2005 to "correct" the attorney general's published interpretation of Section 531.1021(g) as announced in 2004, if it had intended the OIG's non-Medicaid investigations to be stripped of their previous confidentiality. Instead, the legislature chose in 2005 to *expand* the scope of confidentiality to cover not just OIG investigations, but also OIG audits.

The Senate Committee on Health and Human Services and House Committee on Criminal Jurisprudence held hearings on S.B. 688 and its companion, H.B. 1332. There was no testimony about Section 4 of S.B.

-21-

688 at either hearing. No further hearings were held. The Bill Analysis of S.B. 688, as enrolled, includes Section 4, however, the "discussion" of Section 4 merely repeats the text of Section 531.1021. (*See* CR 57-59). The enrolled Bill Summary makes no mention of Section 4. (*See* CR 60). Thus, no legislative history exists on the intent of Section 4 of S.B. 688.

If the authors of S.B. intended to severely limit the pre-existing confidentiality for OIG, on which the OIG had relied for many years, it is likely that some mention of this outcome would have been made by the sponsors or persons testifying for, against, or on the bill. (*See* CR 57-59). Silence, instead, supports reading the amendment to be applicable only to information compiled "by the office of the attorney general in connection with a Medicaid fraud investigation," and to have no effect on the scope of information made confidential in connection with OIG investigations.

In enacting a statute, it is presumed that a just and reasonable result is intended, and that a result feasible of execution is intended. TEX. GOV'T CODE § 311.021 (3), (4). Limiting confidentiality of OIG investigations would not be consistent with OIG responsibilities, since the 2011 amendment of Section 531.1021(g) did not narrow or even address OIG's responsibilities. Because OIG's responsibilities were not narrowed by a contemporaneous legislative action, it makes no sense that the previous

confidentiality expressly accorded to OIG audits and investigations would have been narrowed by S.B. 688.

Indeed, as late as June 21, 2011, Abbott issued yet another straightforward interpretation of Section 531.1021(g).  An HHSC agency received a request for information related to "suspected violations or misconduct by employees regarding outside employment and/or accepting outside compensation."  As it always had before, ORD applied Section 531.1021(g) to protect information purely on the ground that it was OIG investigative material compiled "in connection with an audit or investigation," holding:

> All information and materials subpoenaed or compiled by the [Office of the Inspector General of the Health and Human Services Commission (the "office")] in connection with an audit or investigation are confidential and not subject to disclosure under [the Act] . . . .

Letter Ruling OR2011-08832 (*See* CR 65).

In fact, between the 2005 and 2011 amendments to Section 531.1021(g), the attorney general continued issuing determinations that material compiled for *any* OIG investigation was protected.  For example:

| | |
|---|---|
| OR2007-02128<br>CR 69-74 | Protected information about complaints filed against the requestor |
| OR2007-04413<br>CR 75-78 | Protected employee records of the requestor |
| OR2008-08172<br>CR 79-83 | Protected information relating to the requestor's job performance, employment actions against HHSC, and personnel records of certain employees |
| OR2008-14653<br>CR 84-88 | Protected the requestor's last five performance evaluations compiled in an investigation of the requestor |
| OR2009-07508<br>CR 89-91 | Protected employee emails regarding a specific incident |
| OR2009-08112<br>CR 92-93 | Protected information about the requestor's employment with the state agency |
| OR2009-10828<br>CR 94-95 | Protected information about sexual harassment allegations against the requestor |
| OR2010-14261<br>CR 96-98 | Protected information about the number of OIG investigations |
| OR2011-08614<br>CR 99-103 | Protected information compiled for an OIG investigation into employee misconduct |

These attorney general Letter Rulings are not presented as authority; they are presented because the 2011 82nd Legislature is presumed to have been aware of the interpretation of Section 531.1021(g) long applied by the

attorney general in enforcing the PIA.[8]   The fact that the Letter Rulings are not dispositive–or that ORD has changed its mind–does not prevent the Court from noting that for many years, before the 2011 amendment to Section 531.1021(g), the attorney general interpreted the statute by giving meaning to all the words, especially those at issue in this case,[9] agencies have relied on these determinations, and the legislature was presumably aware of these determinations when it amended Section 531.1021(g) in 2005[10] and 2011.[11]   In each instance, if the legislature had wanted to change the attorney general's interpretation of Section 531.1021(g) to narrow the scope of material deemed confidential in relation to OIG investigations, it could have done so.   In fact, with each amendment, the legislature expanded the scope of material deemed confidential.   If the

---

[8] Even though Abbott sent a letter to the court in another lawsuit on April 13, 2012, announcing that previous attorney general rulings were "wrong on the issue of extending Section 531.1021(g)'s confidentiality to protect investigations of employee misconduct unrelated to an allegation of fraud or abuse . . ., " the Court is entitled to consider these previous Letter Rulings, because the 82nd Legislature is presumed to have been aware of them.

[9] "We recognize that opinions of the Attorney General are persuasive authority and are not controlling on the courts . . . .   Accordingly, we are not bound to follow them–especially in a situation, as here, where the Attorney General has issued conflicting opinions on the same issue." *City of Fort Worth v. Abbott*, 258 S.W.3d 320, 326 (Tex. App.–Austin 2008, no pet.) (citing *Houston Chronicle Publishing Co. v. City of Houston*, 531 S.W. 2d 177, 185 (Tex. Civ. App.–Houston [14th Dist.] 1975), writ ref'd per curiam, 536 S.W.2d 559 (Tex. 1976)).

[10] Acts 2005, 79th Leg., ch. 349, § 18(b).

[11] Acts 2011, 82nd Leg., R.S., ch. 620, § 4.

legislature disagrees with this interpretation, it may amend the statute to clarify its intent.

## PRAYER

Section 552.101 of the Public Information Act excepts from disclosure information that is confidential by law. Texas Government Code section 531.1021(g) makes information in *all* audit and investigation files of the OIG confidential. The information at issue in this appeal is, therefore, excepted from disclosure, and the trial court's ruling should be upheld.

DSHS asks the Court to affirm the trial court's ruling.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

ROBERT O'KEEFE
Division Chief
Financial Litigation, Tax, and Charitable
Trusts Division

/s/ *Ann Hartley*
ANN HARTLEY
Assistant Attorney General
Financial Litigation, Tax, and Charitable
Trusts Division
State Bar No. 09157700
P.O. Box 12548
Austin, Texas  78711-2548
Telephone:  (512) 936-1313
Telecopier:  (512) 477-2348
ann.hartley@texasattorneygeneral.gov

## CERTIFICATE OF COMPLIANCE

In compliance with T.R.A.P. 9.4(i)(2), this brief contains 4,978 words,

excluding the portions of the brief exempted by Rule 9.4(i)(1).

/s/ *Ann Hartley*
ANN HARTLEY
Assistant Attorney General
Counsel for Appellee

**CERTIFICATE OF SERVICE:**

I hereby certify that a true copy of this Appellees' Brief was sent by electronic mail this 9th day of February, 2015, to counsel for the attorney general, as follows:

Matthew R. Entsminger
Assistant Attorney General
Open Records Litigation
Administrative Law Division
Office of the Attorney General of Texas
P.O. Box 12548
Austin, Texas 78711-2548
matthew.entsminger@texasattorneygeneral.gov


      */s/ Ann Hartley*
ANN HARTLEY
Assistant Attorney General
Counsel for Appellee

# APPENDIX

Tex. Gov't Code § 531.1021(g)





**Effective: September 1, 2011**

Vernon's Texas Statutes and Codes Annotated Currentness
  Government Code(Refs & Annos)
    Title 4. Executive Branch (Refs & Annos)
      Subtitle I. Health and Human Services
        Chapter 531. Health and Human Services Commission (Refs & Annos)
          Subchapter C. Medicaid and Other Health and Human Services Fraud, Abuse, or Overcharges (Refs & Annos)
            ➡➡ **§ 531. 1021. Subpoenas**

(a) The office of inspector general may request that the commissioner or the commissioner's designee approve the issuance by the office of a subpoena in connection with an investigation conducted by the office. If the request is approved, the office may issue a subpoena to compel the attendance of a relevant witness or the production, for inspection or copying, of relevant evidence that is in this state.

(b) A subpoena may be served personally or by certified mail.

(c) If a person fails to comply with a subpoena, the office, acting through the attorney general, may file suit to enforce the subpoena in a district court in this state.

(d) On finding that good cause exists for issuing the subpoena, the court shall order the person to comply with the subpoena. The court may punish a person who fails to obey the court order.

(e) The office shall pay a reasonable fee for photocopies subpoenaed under this section in an amount not to exceed the amount the office may charge for copies of its records.

(f) The reimbursement of the expenses of a witness whose attendance is compelled under this section is governed by Section 2001.103.

(g) All information and materials subpoenaed or compiled by the office in connection with an audit or investigation or by the office of the attorney general in connection with a Medicaid fraud investigation are confidential and not subject to disclosure under Chapter 552, and not subject to disclosure, discovery, subpoena, or other means of legal compulsion for their release to anyone other than the office or the attorney general or their employees or agents involved in the audit or investigation conducted by the office or the attorney general, except that this information may be disclosed to

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

the state auditor's office, law enforcement agencies, and other entities as permitted by other law.

(h) A person who receives information under Subsection (g) may disclose the information only in accordance with Subsection (g) and in a manner that is consistent with the authorized purpose for which the person first received the information.

CREDIT(S)

Added by Acts 2003, 78th Leg., ch. 198, § 2.20, eff. Sept. 1, 2003. Amended by Acts 2005, 79th Leg., ch. 349, § 18(b), eff. Sept. 1, 2005; Acts 2011, 82nd Leg., ch. 620 (S.B. 688), § 4, eff. Sept. 1, 2011.

Current through the end of the 2013 Third Called Session of the 83rd Legislature

(C) 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.