# Supreme Court of Texas

No. 23-0244

Texas Commission on Environmental Quality,

*Petitioner*,

v.

Ken Paxton, Attorney General of Texas, and Sierra Club,

*Respondents*

On Petition for Review from the
Court of Appeals for the Third District of Texas

**Argued September 9, 2025**

JUSTICE SULLIVAN delivered the opinion of the Court, in which Chief Justice Blacklock, Justice Devine, Justice Bland, Justice Huddle, Justice Young, and Justice Hawkins joined.

JUSTICE BUSBY filed a dissenting opinion, in which Justice Lehrmann joined.

The Office of the Attorney General decided that the Texas Commission on Environmental Quality blew a deadline under the Public Information Act back in 2019. Throughout the seven years of litigation that ensued, OAG has disavowed its own decision—and rightly so. "Wisdom too often never comes, and so one ought not to reject it merely

because it comes late." *Henslee v. Union Planters Nat'l Bank & Tr. Co.*, 335 U.S. 595, 600 (1949) (Frankfurter, J., dissenting). We reverse and remand for further proceedings.

**I**

On July 1, 2019, TCEQ received a written request from Sierra Club under the Public Information Act. The three-page request sought a broad swath of records relating to a recently issued Development Support Document entitled "Ethylene Oxide Carcinogenic Dose-Response Assessment." In response, TCEQ sent the following email to Sierra Club on July 2, 2019:

> We are in receipt of your public information request . . . .
>
> Please clarify whether your request is seeking confidential information. If you request confidential information, we will need to seek an Attorney General opinion for the requested confidential material or information. It may take up to 60 days for the Attorney General to reach a determination on our request.
>
> Please let me know how you would like to proceed.

Within minutes, Sierra Club answered that it "would like to receive all responsive information that TCEQ may believe is confidential, but that must be released under the . . . Public Information Act."

According to TCEQ, many of the requested documents were protected against disclosure by the Public Information Act's deliberative-process exception. *See* Tex. Gov't Code § 552.111; *City of Garland v. Dall. Morning News*, 22 S.W.3d 351 (Tex. 2000). And so, in a letter to OAG's Open Records Division dated July 17, 2019, TCEQ "ask[ed] for a decision from the attorney general about whether the

2

information is within that exception," such that it could withhold the contested documents from Sierra Club. Tex. Gov't Code § 552.301(a).

TCEQ's letter to OAG was due "not later than the 10th business day after the date of receiving [Sierra Club's] request." *Id.* § 552.301(b). In an opinion of September 23, 2019, OAG decided that TCEQ was two days too late. In counting up business days, OAG excluded the date the public-information request was received (July 1); the Independence Day holiday (July 4); and weekends (July 6, 7, 13, and 14). That calculation put the ten-business-day deadline at July 16, whereas TCEQ's letter was not actually received by OAG until July 18.

A blown deadline meant that "the information requested [was] presumed to be subject to required public disclosure," and had to be released absent "a compelling reason to withhold the information." *Id.* § 552.302. OAG's opinion went on to decide that the deliberative-process privilege invoked by TCEQ was not sufficiently compelling. As a result, TCEQ faced the prospect of producing over 6,000 pages of documents to Sierra Club.

A week later, TCEQ sent OAG a request for correction as to timeliness based on three pieces of information that weren't in its initial letter. First, TCEQ argued that Friday, July 5 wasn't a business day because the agency was closed in observance of Independence Day. TCEQ admitted that, "due to a clerical oversight, the referral letter did not include a clear statement informing the OAG that the agency was closed on July 4th and 5th." Second, TCEQ attached its July 2 emails with Sierra Club and noted that it "could have, but did not choose to rely on [that] clarification, which would have provided the agency an

3

additional day to submit its referral" by resetting the ten-business-day period. Third, TCEQ attached affidavits showing that its initial letter was placed in the interagency mail on July 17, thereby establishing its submission as of that date. OAG declined to reconsider its opinion.

TCEQ sued OAG under the Public Information Act for a declaratory judgment allowing it to withhold the contested documents. *See id.* § 552.324. Sierra Club intervened to seek a writ of mandamus compelling disclosure. *See id.* § 552.321. OAG conceded, based on the new information in the request for correction, that its own opinion was wrong and that TCEQ had met the ten-business-day deadline. The district court nevertheless granted summary judgment for Sierra Club, ordering TCEQ to produce 6,414 pages of documents.

The court of appeals affirmed, holding that TCEQ's request for an OAG decision was untimely. *See* 712 S.W.3d 630, 637–40 (Tex. App.—Austin 2022). It rejected the argument, put forth by both TCEQ and OAG, that July 5, 2019, was not a "business day" within the meaning of the Act because TCEQ was closed. *Id.* at 637–39 (construing Tex. Gov't Code § 552.301(b)). In addition, the court of appeals held that the ten-business-day clock was not reset by the email exchange on July 2, 2019. *Id.* at 639–40.

Before this Court, OAG (but not Sierra Club) has confessed error in the judgment below. We granted TCEQ's petition for review.

4

## II

The parties dispute three issues.  First, did TCEQ's emails with Sierra Club reset the ten-business-day clock?[1]  Second, was July 5, 2019 a business day?  Third, does TCEQ get the benefit of the "mailbox rule"? We needn't resolve all three issues.  If TCEQ wins on any two, then its letter to OAG was timely.  If Sierra Club wins any two, then the letter was untimely.[2]  We score the results of this best-of-three series below.[3]

---

[1] Sierra Club says TCEQ didn't preserve this issue.  We disagree. TCEQ's third amended motion for summary judgment used the term "clarification request," but substantively invoked the narrowing exception. OAG also discussed the narrowing exception in its summary-judgment reply, removing any doubt as to whether the issue was properly before the court. Still, Sierra Club argues that TCEQ didn't preserve the issue because it wasn't included in the letter to OAG.  But the preservation rules that apply to court proceedings don't apply to OAG's.  True, the Public Information Act declares that a governmental body may only raise exceptions in court that were "properly raised before the attorney general in connection with its request." Tex. Gov't Code § 552.326.  But this restriction concerns substantive exceptions to disclosure, not matters of timing.  We can therefore assume that timeliness arguments needn't be preserved before OAG.

[2] For the curious, here's the math:  TCEQ's letter to OAG was due "not later than the 10th business day after the date of receiving [Sierra Club's] request."  Tex. Gov't Code § 552.301(b).  In an opinion of September 23, 2019, OAG said TCEQ was two days too late.  Each of TCEQ's issues would yield an extra day: (1) July 2 (if that's when the timer was reset); (2) July 5 (if that wasn't a "business day"); and (3) July 17 (if that's when TCEQ's letter was "received" thanks to the mailbox rule).  If TCEQ wins on all three issues, then it actually sent its letter one day *early*; to win reversal, it just needs two.

[3] In concluding that TCEQ lacked "a compelling reason to withhold the information," Tex. Gov't Code § 552.302, the court of appeals "decline[d] to hold that the deliberative process privilege is on equal footing with the attorney-client privilege such that its application constitutes a compelling reason," 712 S.W.3d at 642.  While this approach strikes us as doubtful, to say the least, we needn't resolve it because another error provides complete relief.  So future courts—including the Third Court of Appeals—remain free to assess the deliberative-process privilege unconstrained by the holding below.

**Game 1**

According to our opinion in *City of Dallas v. Abbott*, 304 S.W.3d 380 (Tex. 2010), TCEQ's shot clock didn't start running until July 2, 2019. That's because TCEQ sent Sierra Club one of the few follow-ups that the Public Information Act allows:

> If what information is requested is unclear to the governmental body, the governmental body may ask the requestor to clarify the request. If a large amount of information has been requested, the governmental body may discuss with the requestor how the scope of a request might be narrowed, but the governmental body may not inquire into the purpose for which information will be used.

Tex. Gov't Code § 552.222(b); *see also id.* § 552.222(a) (restricting a governmental body's ability to "make an inquiry of a requestor").

Sierra Club's public-information request of July 1, which spanned three pages, swept up "a large amount of information." *Id.* § 552.222(b). And TCEQ's email of July 2 attempted to "narrow[]" what it might have to produce or contest. *Id.* Indeed, 6,414 pages of documents arguably protected by the deliberative-process privilege would've been off the table had Sierra Club agreed not to seek confidential information. It was worth a shot; some requestors prefer disclosure that is narrower but quicker, as the Legislature itself has recognized. *See id.* § 552.235(a) ("The attorney general shall create a public information request form that provides a requestor the option of excluding from a request information that the governmental body determines is: (1) confidential; or (2) subject to an exception to disclosure that the governmental body would assert if the information were subject to the request.").

6

On July 2, however, Sierra Club declined to narrow its public-information request in this way. Fair enough. That means the next day, July 3, was the first of TCEQ's ten business days. This result follows from *City of Dallas*, in which we held "that the timeliness of a request for an attorney general opinion is measured from the date a party seeking public information responds to a governmental body's good-faith request for clarification or narrowing of an unclear or overbroad information request." 304 S.W.3d at 381; *see also id.* at 384.

Our holding in *City of Dallas* makes sense within the context of the Public Information Act's deadlines. Without that holding, a governmental body would have to seek an OAG opinion by the tenth business day even if it hadn't gotten a response to a request for clarification or narrowing. OAG would then have up to 55 business days to render a decision. Tex. Gov't Code § 552.306(a). During that period, however, the underlying public-information request could be deemed withdrawn: "If by the 61st day after the date a governmental body sends a written request for clarification or discussion . . . the governmental body . . . does not receive a written response from the requestor, the underlying request for public information is considered to have been withdrawn by the requestor." *Id.* § 552.222(d). It's hard to believe the Legislature would squander scarce resources by forcing OAG to begin evaluating a public-information request that might change in scope or disappear altogether.

The court of appeals gave two reasons for refusing to reset the ten-business-day period under *City of Dallas*. Neither is sound. First, the opinion below asserted "that it was clear to [TCEQ] what

7

information the Sierra Club was requesting." 712 S.W.3d at 640. Sure it was—but there are two sentences in the relevant subsection of the Act, so TCEQ could try to clarify *or* narrow the public-information request. *See* Tex. Gov't Code § 552.222(b); *cf. Loc. Union 1261 v. Fed. Mine Safety & Health Rev. Comm'n*, 917 F.2d 42, 45 (D.C. Cir. 1990) (R.B. Ginsburg, J.) ("If the first rule of statutory construction is 'Read,' the second rule is 'Read On!'"). Sierra Club's request *clearly* covered thousands of pages arguably protected by the deliberative-process privilege. This pellucid breadth is what prompted TCEQ's attempt, the good-faith nature of which is uncontested here, to "discuss with the requestor how the scope of a request might be narrowed." Tex. Gov't Code § 552.222(b). The clock started ticking only after Sierra Club rejected TCEQ's "good-faith request for . . . narrowing of an . . . overbroad information request." *City of Dallas*, 304 S.W.3d at 381.

Second, the court of appeals faulted TCEQ for omitting a statutorily required warning from its July 2 email. *See* 712 S.W.3d at 640. As noted above, a public-information request will be deemed withdrawn if the requestor doesn't respond within 61 days to a governmental body's attempt at clarification or narrowing. Tex. Gov't Code § 552.222(d). To put the requestor on notice that delay can foreclose transparency, the governmental body "must include a statement as to the consequences of the failure by the requestor to timely respond to the request for clarification, discussion, or additional information." *Id.* § 552.222(e).

Regrettably, TCEQ's July 2 email contained no such statement. "[W]hen an agency fails to comply with a statutory duty," however, "the

8

Judiciary may impose only consequences that are explicit in the statutory text or logically necessary to accomplish the statute's purpose." *Image API, LLC v. Young*, 691 S.W.3d 831, 843 (Tex. 2024) (internal quotation marks omitted). The Public Information Act expressly prescribes consequences for some violations, but not for this one. *See, e.g.*, Tex. Att'y Gen. OR2016-27766, 2016 WL 7466465, at *2 (Dec. 15, 2016) (contrasting Tex. Gov't Code § 552.222(e) with Tex. Gov't Code § 552.302). And logic hardly dictates that we pretend like TCEQ's good-faith narrowing request doesn't exist. Instead, the logically necessary consequence of TCEQ's omission is that the public-information request wouldn't have been considered withdrawn had Sierra Club waited 61 days (rather than a few minutes) to respond.

The dissent reasons that TCEQ's email could not have been an attempt to "narrow" the scope of the request because confidential information is already exempt from disclosure. On this view, TCEQ was asking Sierra Club whether it wanted information it couldn't get—a nonsensical inquiry. But TCEQ's inquiry wasn't nonsensical. As the rest of the email makes clear, TCEQ was not asking whether Sierra Club wanted information that was in fact confidential. Instead, TCEQ asked whether Sierra Club would be satisfied with excluding documents that TCEQ *believed* were confidential, or whether it would instead require the Attorney General to agree that the documents should be withheld. Public-information requests are a volume business, and Sierra Club is a frequent flyer, so it understood this shorthand well. In fact, TCEQ's email made this point explicit: "If you request confidential information, we will need to seek an Attorney General opinion for the requested

9

confidential material or information." In other words, TCEQ told Sierra Club that it could have more documents slowly, or fewer documents quickly. Sierra Club chose the former, but its request would've been narrowed had it chosen the latter. TCEQ's email therefore was an effort to "narrow[]" the "scope of a request," Tex. Gov't Code § 552.222(a), albeit an unsuccessful one.

In fact, the Legislature contemplated that agencies would do exactly what TCEQ did here. The Act requires that OAG create a standard public-information form for agencies to use. That form must ask, among other things, whether the requestor is seeking information "that the governmental body determines is . . . confidential." *Id.* § 552.235. So while the dissent thinks it's nonsensical for agencies to ask whether requestors seek confidential information, the Legislature disagrees. Indeed, the Legislature *requires* that agencies be enabled to ask that question on a boilerplate form. The dissent would therefore require agencies to sometimes ask a question that the Act forbids them from asking. That can't be right. *See, e.g.*, *Harris Cnty. Appraisal Dist. v. Tex. Workforce Comm'n*, 519 S.W.3d 113, 122 (Tex. 2017) ("If two statutes are in conflict, 'we will construe the different provisions in a way that harmonizes rather than conflicts.'" (quoting *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 716 (Tex. 2015))).

## Game 2

As explained above, July 3, 2019, was the first of TCEQ's ten business days. Sierra Club argues that July 5 was the next business day, even though TCEQ was closed on that date (a Friday) for

10

Independence Day. If Sierra Club is right, then TCEQ's ten-business-day deadline for requesting an OAG opinion was July 17.

Under the Public Information Act, that deadline "is met in a timely fashion if . . . the agency provides evidence sufficient to establish that the request . . . was deposited in the interagency mail within that period." Tex. Gov't Code § 552.308(b). TCEQ's evidence shows that its letter requesting an OAG opinion was deposited in the interagency mail on July 17.

On September 30, 2019, TCEQ responded to OAG's y'all-blew-the-deadline opinion by sending a request for correction. Attached to that request were a pair of relevant affidavits. In one, a legal assistant at TCEQ "certif[ied] that on July 17, 2019, . . . [she] deposited into TCEQ's interagency outgoing mailbox correspondence addressed to the Office of the Attorney General requesting a formal opinion related to TCEQ PIR No. 19-48291," which was the reference number for Sierra Club's public-information request. In the other, TCEQ's supervisor of mail operations declared: "All interagency mail is either received in the mailroom or collected from each TCEQ division['s] interagency outgoing mailbox at the end of each business day by a mailroom employee and picked up the next morning by the Comptroller Office's TPASS Division for delivery."

With these affidavits, TCEQ got the benefit of the mailbox rule as of July 17. Sierra Club's two-page argument to the contrary is not well taken. After correctly noting that "TCEQ raised the mailbox rule only after the Attorney General had already ruled," Sierra Club incorrectly contends that the Public Information Act "does not allow TCEQ to submit belated evidence or to seek reconsideration of an Attorney

11

General ruling." Respondent's Br. 40–41 (citing Tex. Gov't Code § 552.301(f)); *accord* Off. of Att'y Gen., *Public Information Act Handbook* 39 (2024) ("Section 552.301(f) . . . precludes a governmental body from asking for reconsideration of an attorney general decision that concluded the governmental body must release information.").

The Act says no such thing. The provision on which Sierra Club relies reads in its entirety as follows:

> A governmental body must release the requested information and is prohibited from asking for a decision from the attorney general about whether information requested under this chapter is within an exception under Subchapter C if:
>
> (1)   the governmental body has previously requested and received a determination from the attorney general concerning the precise information at issue in a pending request; and
>
> (2)   the attorney general or a court determined that the information is public information under this chapter that is not excepted by Subchapter C.

Tex. Gov't Code § 552.301(f).

This statutory text puts in place something like collateral estoppel, not a ban on asking OAG to reconsider an opinion it just issued. *Cf. First Sabrepoint Cap. Mgmt., L.P. v. Farmland Partners Inc.*, 712 S.W.3d 75, 85 (Tex. 2025) ("Collateral estoppel . . . bars parties from relitigating identical issues of fact or law in multiple lawsuits."). Its "prohibit[ion]" works *before* a governmental body has "ask[ed] for a decision from the attorney general." Tex. Gov't Code § 552.301(f). If, by that point, disclosure of "the precise information at issue" has been decreed with respect to a "previous[]" public-information request, then the governmental body can't ask for a second decision. *Id.*

12

That's not what TCEQ was doing in its letter of September 30, 2019. Months earlier, it had requested an OAG opinion about the Ethylene Oxide Carcinogenic Dose-Response Assessment, and that lone request was still pending with OAG. Before suing OAG for declaratory relief on October 4, 2019, TCEQ provided information with which to correct an opinion that OAG itself now concedes was wrong. It can't be said that, once OAG called for disclosure, TCEQ was suddenly "prohibited from asking for a decision" that it had already requested.

To be sure, TCEQ could've saved everyone a great deal of time and trouble by referring to the interagency mailbox in its initial letter. A little boilerplate would've gone a long way. But this isn't an Administrative Procedure Act case, in which "the court's review is limited to questions of law" that must be "determined based solely on the record of proceedings compiled in and by the agency and the evidence contained in such record." *Cornyn v. City of Garland*, 994 S.W.2d 258, 263–64 (Tex. App.—Austin 1999, no pet.) (citing Tex. Gov't Code §§ 2001.174, .175(e)).[4] Instead, "declaratory-judgment actions [under the Public Information Act] are brought, heard, and determined in the same manner as civil actions generally, based on . . . the evidence

---

[4] The Public Information Act does impose its own unique exhaustion requirement—it just doesn't apply here. "[T]he only exceptions to required disclosure . . . that a governmental body may raise in a suit . . . are exceptions that the governmental body properly raised before the attorney general . . . ." Tex. Gov't Code § 552.326; *see also City of Dallas v. Paxton*, 721 S.W.3d 60, 73 (Tex. App.—15th Dist. 2025, no pet.) ("Just four months after *Cornyn* issued, the Legislature did in fact impose exactly the kinds of limitations to what issues could be 'properly raised' in a suit against the Attorney General."). The exception at issue in TCEQ's declaratory-judgment action—the deliberative-process privilege—is the same exception as in its initial letter to OAG.

received in court." *Cornyn*, 994 S.W.2d at 264. The affidavits from TCEQ's legal assistant and supervisor of mail operations, both of which can be found in the summary-judgment record, "provide[] evidence sufficient to establish that the request . . . was deposited in the interagency mail" in a timely fashion. Tex. Gov't Code § 552.308(b).

## Game 3

Because TCEQ won the first two games, we don't need to decide whether July 5 was a business day—even if it was, that'd just mean TCEQ's mailbox-rule submission came right on time. That is perhaps for the best, because deciding this issue would be exceedingly complex. When Sierra Club sent its request, the term "business day" was undefined. The court of appeals concluded that July 5 didn't count as one because it construed "business day" to exclude only Saturdays, Sundays, and legal holidays, not days that the agency chose to close its offices. *See* 712 S.W.3d at 639. In apparent response to this holding, the Legislature amended the statute to define "business day," giving agencies the authority to "designate a day on which the governmental body's administrative offices are closed or operating with minimum staffing as a nonbusiness day." Act of June 13, 2023, 88th Leg., R.S., ch. 847, § 1, 2023 Tex. Gen. Laws 2633, 2633–34 (codified at Tex. Gov't Code § 552.0031). Although other provisions of the underlying bill were given only prospective effect by the Legislature, this new definition was not among them. *See id.* §§ 13, 14.

To decide whether to apply the 2023 definition to this circa-2019 case, we'd have to grapple with our Constitution's prohibition against "retroactive law[s]." Tex. Const. art. I, § 16. "Over the years, this

Court's varied precedents on retroactivity came to resemble a tangled wad of Christmas lights pulled from the attic after Thanksgiving." *Hogan v. S. Methodist Univ.*, 688 S.W.3d 852, 857 (Tex. 2024) (citing *Robinson v. Crown Cork & Seal Co.*, 335 S.W.3d 126, 138–45 (Tex. 2010)). Untangling that strand wouldn't change the outcome here, so we'll just leave it be for now. *See Abbott v. Harris County*, 672 S.W.3d 1, 15 (Tex. 2023) ("Because we can avoid reaching these questions by declining to resolve the parties' disputes about the meaning and constitutionality of [a statute] and instead resting our decision on other grounds, we must do so."); *In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003) ("As a rule, we only decide constitutional questions when we cannot resolve issues on nonconstitutional grounds.").

According to the dissent, the first two games actually result in a 1–1 tie. To function as a dissent, such that Sierra Club would win and the judgment below would be affirmed, today's separate opinion must implicitly conclude both that the 2023 amendment doesn't apply retroactively, *and* that July 5 was a "business day" under the Public Information Act as it read in 2019. If it instead called the third game in TCEQ's favor, such that TCEQ still wins reversal, then the separate opinion would be a concurrence in the judgment rather than a dissent. Understandably, though, the dissent doesn't expend scarce judicial resources and time by wrestling with the wadded Christmas lights and interpreting a now-obsolete version of the Act.

15

*　　*　　*

Because TCEQ didn't blow the ten-business-day deadline, we reverse and remand for further proceedings. The lower courts can decide, in the first instance, whether TCEQ's records are protected by the deliberative-process privilege.

James P. Sullivan
Justice

**OPINION DELIVERED:** April 17, 2026

16